## ORPHEUM THEATRE AND REALTY COMPANY, Respondent, v. SEAVEY AND FLARSHEIM BROKERAGE COMPANY, Appellant.

### Kansas City Court of Appeals, November 5, 1917.

1. **CORPORATION: Brokerage Corporation: Building Subscription: Ultra Vires.** A corporation chartered to carry on a general brokage business, has not the power to make a binding contract of subscription to aid in the erection of a theatre building, even though the building is built. The contract is *ultra vires.*

2. **———: Corporate Powers: Law of Organization: Business: Restrictions.** Corporate existence, power to transact business and incur obligations come from a grant by the State. The statute law of Missouri requires that when the corporate name is that of a firm or company the business must be named followed by the word, "company," or "corporation," with the purpose for which it is formed, and that no business shall be transacted except that named, or such as is necessarily implied in order to carry out its functions.

3. **———: Ultra Vires: Statute of Frauds: Part Performance.** The rule applied in cases arising under the Statute of Frauds that performance by one party will remove the statute cannot be applied to cases involving *ultra vires.*

4. **———: Contract: Implied: Charter.** The contract of a corporation is *ultra vires* unless it is expressly authorized, or is necessarily implied in order to carry out or advance the business of the corporation as stated in its charter.

5. **———: Repudiated Contract: Restoration.** A corporation which has received money or property by reason of a contract which it repudiated on the ground of *ultra vires*, may be compelled in some other action to make restoration to the other party.

6. ————: **Charter: Missouri Statute: Federal Cases.** The statute of Missouri forbids a corporation to make a contract that is not expressly authorized by its charter, thus practically harmonizing our law with that announced in federal and other cases.

7. ————: **Contract: Foreign to Business: Excess of Power: Estoppel.** A contract of a corporation which is foreign to its chartered business is void and cannot be ratified, nor can estoppel follow. But if the contract is in line of its chartered business though its power is exceeded in making the contract of some illegality or irregularity it may be ratified, or there may be estoppel.

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney,* Judge.

REVERSED.

*Grant I. Rosenseweig* for appellant.

*Hadley, Cooper, Neal & Wright* for respondent.

ELLISON, P. J.—Plaintiff and defendant are corporations organized under the laws of this State; the former as a theatre and the latter as a brokerage company. The former was in the course of preparation for the erection of a large theatre building in Kansas City and the latter was engaged in what is commonly known as the brokerage business in such city; its articles of incorporation stated that it was organized for the purpose of carrying on and doing "a general brokerage business."

Just prior to the origin of the present controversy the plaintiff corporation desired to change its location from West 9th street in said city to a new place on Baltimore Avenue, if it could receive sufficient financial encouragement from property holders in the latter vicinity. To that end subscriptions were started among interested property holders who it was thought would be led to subscribe with a view to the increased value of their holdings likely to follow the erection of a large and handsome building.

Defendant was located in the brokerage business in a distant part of the city but its stockholders, three

in number, as individuals, jointly owned a twenty-five foot lot in the vicinity of the proposed theatre building. It was solicited to subscribe and did make a subscription in the sum of one thousand dollars as a bonus for the erection of the building, duly signed in its corporate name, by its Vice President. The building was thereafter erected and defendant refusing to pay, this action followed, the plaintiff recovering judgment in the trial court.

More than one reason has been assigned for refusing to pay, among others, no consideration and fraud, but we put these aside and proceed to consider the main controversy which relates to the power or authority of the defendant corporation to make a subscription for the foregoing purposes in the circumstances stated. It involves the doctrine of *ultra vires*.

It will be observed that defendant is a corporation doing a brokerage business not in the vicinity of the proposed new building, and that it did not own any property in that neighborhood and could not be said to be benefited by the improvement. Doubtless defendant was approached because its stockholders owned the lot spoken of above near the new building, but as for defendant itself it had no interest in the matter which could be subserved.

Corporate existence, power to transact business and incur obligations, come from a grant by the State; in this State by public law. Our statute forbids an incorporation when, as here, the corporate name is that of a person or firm, unless the business be named, followed by the word "company" or "corporation." [Sec. 2978, R. S. 1909.] In this case the business was named "Seavey & Flarsheim Brokerage Company." The statute also requires the purpose for which the corporation is formed to be stated. [Sec. 3339, R. S. 1909, Subdiv. 7.] Finally it is provided in section 2990 of the statute, as is specified in section 6, article 12 of the Constitution, "that no corporation shall engage in business other than that expressly authorized in its charter, or the law under which it may have been or

may hereafter be organized." Everyone dealing with the corporation is bound to take notice of this law. [Franklin Co. v. Lewiston Sav. Bank, 68 Maine 43.]

It is a fundamental rule of corporation law that the law of its nature "is such and only such, as its charter confers." [N. Y. F. Ins. Co. v. Ely, 5 Conn. 560; Scott v. Bankers Union, 73 Kansas 575. 585.] The Supreme Court of Illinois said that, "A corporation has no natural rights or capacities, such as an individual or an ordinary partnership, and if a power is claimed for it, the words giving the power or from which it is necessarily implied must be found in the charter or it does not exist." [Nat'l Home Bldg. Ass'n v. Bank, 181 Ill. 35, 40.] The Supreme court of the United States in Central Trans. Co. v. Pullman Car Co., 139 U. S. 24, 48, said that, "The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental." The same is said in Best Brewing Co. v. Klassen, 185 Ill., 37. We cite also Davis v. Old Colony Railroad and Davis v. Smith American Organ Co., 131 Mass. 258; 276, for an exhaustive discussion of the subject, though the necessities of the case before us do not require that we approve of the application of the law to the facts of those particular cases.

To legalize transactions purporting to be the act of a corporation (apart from any question or estoppel or ratification) one must find its express authorization in the law (and so our statute says) or show a necessary implication of authority in order to enable it to fully carry out, or exercise the functions for which it has been brought into existence. [Franklin Nat'l Bank v. Whitehead, 149 Ind. 560.] It is said in Stacy v. Glen Hotel Co., 223 Ill. 546, 552, that, "Where an act is not *ultra vires* for want of power in the corporation but for want of power in its agents or officers or because of the disregard of mere formalities which the law requires to be observed or is an improper use of one of the enumerated powers, it may be valid as to third per-

Orpheum Theatre & Realty Co. v. Brokerage Co.

sons; where, however, the contract of a corporation is *ultra vires* in the proper sense, that is to say, beyond the object of its creation as defined in the law of its organization and therefore beyond the powers conferred upon it by the Legislature, the contract is not only voidable, but is wholly void and without any legal effect. The objection to the contract in such case is not merely that the corporation ought not to have made it, but that it could not make it. Such a contract cannot be ratified by either party, because it could not have been authorized by either party. No performance on either side can give the unlawful contract validity or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the Legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such prerequisites might, in fact, have been complied with; but when the contract is beyond the powers conferred upon it by existing laws, neither the corporation nor the other party to the contract can be estopped to show that it was prohibited by those laws by consenting to it or acting upon it." The same thing is stated in Central Trans. Co. v. Pullman Car Co., 139 U. S. 24, 59. 60, and is reasserted in McCormack v. Market Nat'l Bank, 165 U. S. 538, 539, and Cal. Bank v. Kennedy, 167 U. S. 362, 367. The later cases in this State do not conflict with these.

However, there are cases to be found that are not in harmony with them. Some have likened cases involving *ultra vires* to actions involving the Statutes of Fraud where performance deprives the statute of application. We said of such suggestion in Kansas City v. O'Connor, 82 Mo. App. 655, 662, that cases of *Ultra vires* could not be likened to those under the Statute of Frauds "For the former are prohibited from being made and the corporation cannot make them. A thing void cannot be made valid by relation. While the latter are not prohibited from being made but are only

prohibited from being enforced and they are not void, they are simply unenforcible. The language of the Statute of Frauds is that 'no action shall be brought to charge' etc. While the language of the law is, that no contract beyond the chartered power can be made." We further stated in that case that where the contract has been performed on *both* sides, neither could rely on *ultra vires* since to do so would require a plea of one's own violation of the law. We further said, quoting from Central Trans. Co. supra, at page 60, that "A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

A comparison of controlling Missouri cases with those referred to we think does not disclose the radical difference that plaintiff undertakes to make out. Indeed they are without substantial difference. The rule in other jurisdictions, only some of which we have referred to, is that a contract, as such, of a corporation is *ultra vires* and unenforcible, unless it is expressly authorized (or necessarily implied in order to further the object of the organization) without regard to one party having received the consideration or the other having performed; it being however understood that justice will be done by compelling the repudiating party to restore what he has received; not by enforcing the contract, but by an action on the case; while the rule in this State

is that contracts of such corporations are valid unless expressly *prohibited*. That is, in the other jurisdictions they are invalid unless expressly authorized, while here they are not invalid unless expressly forbidden. Influenced by our statute, supra, these different statements lead to the same result. We must look to the statute, and charter granted thereunder, and the adjudicated cases in this and other jurisdictions to see what is meant by expressions in special cases. In doing so we should not confuse contracts which a corporation has no power to make or perform at all with those which it has authority to make, but has made in an irregular or improper way. The former are absolutely void, while the latter may be validated by ratification, or estoppel, or the like, and in this, the cases aforesaid and those from this State to which we will refer, agree.

The courts in this State have not put any strained construction on the plain letter of the statute as plaintiff's argument would lead one to believe. The statute, following the Constitution, says—we quote again—''No corporation shall engage in business other than that *expressly* authorized in its charter or the law under which it may have been or may hereafter be organized.'' That is a positive prohibition against making any contract that is not expressly authorized, wherefore if the authority does not expressly appear it is expressly forbidden, and a contract would be void in this State as well as in the other jurisdictions we have named. A corporation charter rarely specifies or enumerates the particular contracts which a corporation may make, but it must specify the *business* which it may do, and of course, its contracts must arise in lawful pursuit of that business, or be connected with it and intended for its advancement. With such a charter the validity of a corporation contract is asertained by asking and answering the question whether it pertains to the corporation's business. If it does not, it is expressly prohibited by our statute and is therefore void and unenforcible as such, leaving the parties to adjust whatever right and justice may suggest arising from receipt of money, service, or

property under the void and repudiated contract. If the contract does pertain to its business, yet is illegally, irregularly or improperly executed, or entered upon, it may be ratified by acts of the corporation, or the corporation may so conduct itself as to be estopped from repudiating it.

We are cited to Bank v. Trust Co., 187 Mo. 494, and Cass Co. v. Ins. Co., 188 Mo. 1, but the contracts involved in those cases were in the line of the chartered business of the corporations concerned and pertained to that business. They are therefore not applicable. Plaintiff however relies principally upon three other cases, one by the Supreme Court, one by the St. Louis Court of Appeals and one by this court. Neither of them are cases at all like the one before us. The one in the Supreme Court (Mining Co. v. Taylor, 247 Mo. 1) concerned a contract of sale of a corporation's assets. A contract directly pertaining to the mining company business and which the court held it had *undoubted power to make*. The trouble with the contract was not the lack of power, but the irregular, or illegal way in which the power was executed, in that a majority of the board of directors at a meeting held without notice ordered the contract to be made. It was executed under such order, looking entirely fair on its face; the other party having no notice of its irregularity, was allowed by the corporation to stand unchallenged, while the other parties paid several thousand dollars in carrying out their part. The corporation attempted to repudiate the contract without refunding or offering to refund the money laid out by the other parties. The Supreme Court, with just indignation, denied the claim and held the contract was not *ultra vires* and that the mining company not offering to refund, was estopped to set up irregularity in the execution of a contract it had authority to make.

The case in the St. Louis Court of Appeals (Smith v. Richardson, 77 Mo. App. 422) also involved a contract which the corporation had a right to make in the proper prosecution of its business, though it was con-

ceded it was irregularly made by the president without an order of the board of directors. The case was where a building and loan association borrowed $2600 and executed its note through its president due in six months. Afterwards it paid $600 on the note and agreed through its president that if the payee would extend the time for one year on the balance the association would deposit a certain bond as collateral security for the payment of such balance. The association deposited the bond and the payee carried out his agreement by forbearing. The association then made partial payments and was afterwards put in charge of a receiver who demanded a return of the bond and brought an action for the bond on the ground that the contract was void. It is apparent that the contract for an extension of time including a deposit of the bond as security during such extension was in the proper prosecution of the association's chartered business; and that notwithstanding it does not appear to have been authorized further than by the action of the president, yet that was an irregularity in the exercise of a power undoubtedly vested in the corporation and it ratified the act by allowing the payee to retain the bond, accepting of the extension and paying the greater part of the balance due on the note.

The case in this court (City of Goodland v. Bank, 74 Mo. App. 365) involved the validity of a contract whereby one bank subscribed to the corporate stock of another bank and *both* parties performed the contract. The case decided arising by reason of one of the parties refusing to discharge the obligation which it assumed when each consummated the contract with the other, thus coming under an exception referred to above wherein the law leaves the parties in the position each voluntarily placed himself. There are however remarks in portions of the opinion we think not in line with the other cases.

But as plaintiff's reliance has been placed more on the remarks and reasoning to be found in the course of the opinions in the Mining Company and the Smith cases than on the actual point decided in them, it becomes necessary to observe what was said by the distinguished

Judges who wrote the opinions. In writing Mining Co. v. Taylor, Judge GRAVES quotes approvingly from Smith v. Richardson, written by Judge BOND while a member of the St. Louis Court of Appeals. It is repeatedly stated that: "No corporation can bind itself or its stockholders by a contract *expressly* prohibited by its charter, by a statute, or by the general law." We have already seen that under the plain command of our statute no corporation shall engage in any business not *expressly* authorized by its charter. But a particular contract made in the business, or pertaining to, or advancing the business of the corporation, may be in excess of the power of the corporation; as, for instance, if it is made in an illegal way, or nonbinding form. In such, and like instances, "if," says the opinion in each of those cases, "the contract has been executed by the other party and *its consideration received by the corporation* (it will) bind the latter on the principle of estoppel, so that it could not be annulled by the corporation without a return of the consideration received by it." In Mining Co. v. Taylor, the following remark by Judge GRAVES is the foundation of the entire decision: "The contract made with Taylor was not void, but only voidable. It was not a contract *ultra vires*, but at most under plaintiff's contention, a contract which the corporation could make, but which it did not make on account of no authority given to the president to make it. Not only so, but it stood by and saw thousands of dollars expended on the property upon the strength of the contract. Such conduct clearly estops it from denying the validity of the contract." The learned Judge further stated in quoting from 2 Thompson on Corporations, that one is "estopped from repudiating the contract without restoring the benefits and putting 'the other party in *statu quo*. This principle is applicable, in its fullest sense, to corporations, which, from their nature, can act only through the instrumentality of agents. If, therefore, an officer of a corporation, or other person, assuming to have power to bind the corporation by a given contract, enters into the contract for the corpora-

tion, and the corporation receives the fruits of the contract, and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterwards rescinding or undoing the contract. In other words, by retaining the fruits of the unauthorized contract with knowledge of the circumstances which entitle it to its election either to affirm or disaffirm it, the corporation ratifies the contract and makes it good by adoption."

Applying the tests laid down in the Mining Co. and the Smith cases, to the case before us, we find though cited by plaintiff in support of the case they destroy it. Here is a brokerage company expressly forbidden by the statute and Constitution to prosecute any business but a brokerage business in a sense entering into the theatre business by subscribing its funds in aid of the erection of a theatre building. Nothing could be a more flagrant violation of the law. It could just as appropriately have engaged in some branch of the fine arts, or in some of the professions.

In neither of those cases is even remote sanction given to the idea that a corporation can make any contract whatever if it is wholly foreign to the business for which it was chartered. On the contrary, the rule we apply in this case is pointedly stated in Smith v. Richardson (p. 430), the Judge, noting a distinction found "in every well reasoned case," said: "No corporation can bind itself or its stockholders by a contract *expressly* prohibited by its charter, by a statute, or by the general law. Such contracts are strictly *ultra vires* and create no obligation as far as they are executory, although the consideration therefor may have been received and enjoyed by the corporation. On the other hand, an act or contract merely in excess of the power granted to corporations, but which is not expressly forbidden either by its charter or the general law of the State, although lacking affirmative authority for its performance on account of the silence, on that subject, of its charter or the general law, may yet, if the contract has been executed by the other party and its

consideration received by the corporation, bind the latter on the principle of estoppel so that it could not be annulled by the corporation without a return of the consideration received by it. Contracts of this kind are not in the strict sense of the term *ultra vires*. They are only unauthorized acts of corporations, and not being void, but only voidable, the option to avoid them is lost if they have been wholly executed or executed by the adverse party.'' Plaintiff's situation in this case drives it to unwarranted interpretations of decisions, forcing it to take position in effect, if not in affirmative statement, that charters have no restraint on the corporations they bring into existence.

In this connection we must call attention to a thoroughly rooted but erroneous idea, advanced by plaintiff in trying to stretch the rule of estoppel to its aid. Noting the necessity for the help of that rule it repeatedly states that defendant has received the consideration for the subscription and that it is therefore estopped from claiming exemption under the rule of *ultra vires*. The fact is that defendant's subscription was a gratuity. It has not gotten, nor was it to get anything from the theatre company. The building of a theatre building and the prosecution of theatrical entertainments have not the remotest connection with defendant's business, nor had it the least interest in such exhibitions.

Whether plaintiff has any remedy against the individual stockholders of defendant who owned the lot we do not say, but certainly it cannot be allowed a recovery in this action without violating every rule for the government of corporations. It has no one but itself to blame, for, as we stated at the outset, it must be held to have known the law, to have been versed with the character of defendant's business and with the restraints of its charter.

The judgment will be reversed. All concur.