JOSEPH SCHLITZ BREWING COMPANY v. MISSOURI POULTRY AND GAME COMPANY et al., Appellants.

Division One, April 9, 1921.

1. **CORPORATION: Ultra Vires: Enforcement of Executed Contract.** It is the settled rule of law in Missouri that the defense of *ultra vires* is not admissible to prevent the enforcement of the contract of a corporation, where the contract has been fully executed on one side, unless it is a contract expressly prohibited by law; and this principle extends to executed contracts for the purchase by a corporation of goods in which the corporation has no authority to deal; and it permits recovery of the price of such goods, purchased and delivered.

2. ————: **Estoppel.** The provision of Section 9749, Revised Statutes 1919, and Section 7, Article 12, of the Constitution of Missouri, that no corporation shall engage in business other than that expressly authorized in its charter, or the law under which it may have been or may hereafter be organized, does not prevent the application of the doctrine of estoppel.

3. **STATUTE OF FRAUDS: Oral Contract of Sale: When Valid.** In an action to recover the balance due on an oral contract for goods sold and actually delivered, amounting to $9472.50, the fact that

the contract was not by its terms to be performed within one year
is no defense.

4. **EXECUTED CONTRACT**: Mutuality. Where a contract for the de-
   livery of beer, while it prescribed the terms of payment by the
   purchaser and set forth many other details, did not obligate the
   brewer to make deliveries but he did in fact, for a series of years,
   make such deliveries, in large quantities. *Held*, that, in an action
   by the brewer to recover a balance for the beer delivered, want of
   mutuality was not admissible as a defense; the shipments and ac-
   ceptance supplied the consideration to support the contract.

5. **SALE OF GOODS**: Bond: Case Adjudged. In the year 1905, a
   corporation organized for the purpose of dealing in dressed poul-
   try, game and country produce, executed a bond with sureties which
   recited that it had agreed to purchase beer from a brewing com-
   pany for a period of ten years, and to sell this company's beer to
   the exclusion of all other malt beverages, and that the brewing
   company consented to sell and ship beer to the Poultry & Game
   Company, from time to time, as needed in its business, at prices
   agreed upon; that the Brewing Company reserved the right to
   change any or all of the prices from time to time, without notice
   to the purchaser or its sureties; and that it also reserved the
   right to terminate the agreement to sell beer at any time without
   notice. The bond further recited that the Brewing Company had
   agreed to extend to the purchaser a standing credit of $10,000.
   The Brewing Company did not sign this bond or the contract.
   recited in it, but did for a period of six years furnish beer in
   large amounts, as ordered. *Held*, first, that the contract, not being
   expressly prohibited by law, and not being *malum in se*, or contrary
   to public policy at the time it was made, was enforceable against
   the Poultry & Game Company and its sureties, although not signed
   by the Brewing Company; *second*, the fact that the contract was
   not to be wholly performed within one year was no defense; and
   *third*, the contract was not void for want of mutuality, the Poul-
   try & Game Company having accepted the beer.

Appeal from St. Louis City Circuit Court.—*Hon.*
                *Rhodes E. Cave,* Judge.

AFFIRMED.

*Charles B. Stark* and *Jourdan, Rassieur & Pierce,*
for appellants.

(1) Plaintiff cannot recover on the bond and con-
tract, in an action on contract, because the contract

287 Mo.—26

was *ultra vires* of the Poultry & Game Company as defined in its articles of incorporation, and the constitutional provision and statute governing the powers of corporations. Sec. 7, Art. 12, Mo. Constitution; Sec. 2990, R. S. 1909; De La Vergne Co. v. German Sav. Instn., 175 U. S. 40; Buckeye Marble & Freestone Co. v. Harvey, 92 Tenn. 115, 18 L. R. A. 252; Anglo-American Land, Mtg. & Agency Co. v. Lombard, 132 Fed. 721; F. & H. Club v. Kessler, 252 Mo. 424; Bowman Dairy Co. v. Mooney, 41 Mo. App. 665; Orpheum Co. v. Brokerage Co., 197 Mo. App. 661. (2) The contract sued on is void for want of consideration and want of mutuality. Hudson v. Browning, 264 Mo. 58. (3) If the contract sought to be enforced is void, as to the Poultry & Game Company, then there can be no judgment against the sureties. There can be no such thing as a judgment against the sureties where there can be no recovery against the principal. Kansas City v. O'Connor, 82 Mo. App. 655; Tandy v. Commission Co., 113 Mo. App. 413; Building Assn. v. Obert, 169 Mo. 507; Railroad v. Smith, 27 Mo. App. 371; Brandt on Sur. & Guar. (3 Ed.), sec. 19, p. 163.

*Abbott & Edwards* for respondent.

(1) Full performance takes a contract out of the requirements of the Statute of Frauds, and therefore the contract or transactions between the Poultry & Game Company and plaintiff are not affected by the statute because plaintiff performed all of the conditions imposed upon it. Bless v. Jenkins, 129 Mo. 657; Marks v. Davis, 72 Mo. App. 562; Smith v. Davis, 90 Mo. App. 538; Sloan v. Paramore, 181 Mo. App. 611; Ordelheide v. Traube, 183 Mo. App. 363; Denny v. Brown, 193 S. W. (Mo.) 552. (2) There is no want of consideration or mutuality in the contract or transactions between the Poultry & Game Co. and plaintiff out of which the indebtedness secured by the bond arose. R. S. 1909, sec. 2774; Cold Blast Trans. Co. v. K. C. Bolt & Nut Co., 114

Fed. 77, 57 L. R. A. 696; Wulze v. Shaefer, 37 Mo. App. 551; 9 Cyc. 329, 333; Heffernan v. Neumond, 201 S. W. 645; Warren v. Coal Co., 207 S. W. 883; Brown Paper Box Co. v. Merc. Co., 190 Mo. App. 584; Stearns on Suretyship (2 Ed.) secs. 28, 57, pp. 34-67; 12 R. C. L. sec. 29, p. 1077; 20 Cyc. pp. 1415, 1416, par. b.; Bleeker v. Hyde, 3 McLean, 279. (3) Where one of the parties to a contract is corporation, the defense of *ultra vires* cannot be maintained against liability on such contract where it has been performed by one party, the contract not being illegal or immoral or expressly prohibited by charter. The party who has performed may sue on the contract the party who received and retained the benefits of his performance thereunder. 5 Thompson, Priv. Corp. sec. 6016, p. 4666; 1 Clark & Marshall, Priv. Corp. p. 598; St. Louis Drug Co. v. Robinson, 81 Mo. 18; Bank v. Trust Co., 187 Mo. 528; Weyrick v. Grand Lodge, 47 Mo. App. 391; Welch v. Heim Brwg. Co., 47 Mo. App. 608; City of Goodland v. Bank, 74 Mo. App. 365; Chenoweth v. Pac. Express, 93 Mo. App. 185; Smith v. Richardson, 77 Mo. App. 422; York v. Farmers' Bank, 105 Mo. App. 127; Bush Const. Co. v. Bambrick-Bates Const. Co., 176 Mo. App. 608; St. Louis v. Ry. Co., 248 Mo. 10.

JAMES T. BLAIR, J.—Plaintiff is a Wisconsin corporation which formerly brewed and sold beer. Defendant Missouri Poultry & Game Company is a Missouri corporation. In August, 1905, F. W. Brockman went to Milwaukee and orally agreed with plaintiff to purchase beer from it; that he would form a corporation for that purpose; that he would go into the business and finance it, furnish a bond signed by himself and August Gehner, and in due time notify plaintiff when to commence shipping its product. On August 26, 1905, the bond was signed. August 29, 1905, Brockman wrote plaintiff ordering beer, and saying: "You can bill this to me if you prefer until the bond is accomplished or make any other arrangement to please yourself, but the *new company*

will take hold of the business at once." On August 31, 1905, Brockman wrote:

"The bond is already signed by Mr. August Gehner, a capitalist of this city and President of the German-American Bank, and myself as surety for the Missouri Poultry & Game Company, and will be forwarded to you *as soon as we obtain the charter* from the State, *which we have applied for,* and the only reason that I am not sending it along is because I do not wish to have it returned here or charged, in case the Secretary of State should have some reason or other to make any request for alteration of any of the articles or possibly in the name. At any rate, I stand good for the two cars of beer ordered and for all which will be forwarded by you, and you can take this as your surety."

The bond was sent to plaintiff on September 2, 1905. It reads as follows:

"Know All Men by These Present, That we, Missouri Poultry and Game, Company, a corporation, organized under the laws of the State of Missouri, of St. Louis, as principal, and F. W. Brockman and August Gehner, of St. Louis, Missouri, as sureties, are held and firmly bound unto the Jos. Schlitz Brewing Company, a corporation of Milwaukee, Wisconsin, in the sum of twenty thousand dollars, good and lawful money of the United States, to be paid to the said Jos. Schlitz Brewing Company, its successors or assigns, to which payment well and truly to be made, we do bind ourselves, jointly and severally, our heirs, executors and administrators, firmly by these presents.

"Sealed with our seals and dated this 26th day of August, 1905.

"Whereas, the above bounden principal has agreed to purchase for and during the next ten years from the date hereof, beer brewed by the Jos. Schlitz Brewing Company (a corporation engaged in the manufacture of beer at Milwaukee, Wisconsin), to the exclusion of all other malt beverages, in consideration whereof, said Jos. Schlitz Brewing Company has consented to sell and ship,

upon the order of said principal, from time to time as needed in his business, its various brands of beer in conformity to the by-laws, rules and regulations established in that behalf and printed on the back hereof, and at the following prices, to-wit: As per special agreement, and to extend to said principal on such purchases a running credit not exceeding $10,000, as long as all purchases in excess of said credit are promptly paid, and the above bounden purchaser, complies with all of his obligations in the premises, the above named obligee having reserved the right to change any or all of the prices aforesaid, from time to time, without notice, to the principal or the sureties; also the right of terminating the aforesaid agreement to sell beer to said principal, without notice, at any time prior to the termination of said period of ten years, and whereupon all amounts then owing from said principal to said obligee shall become due and payable forthwith; and further, reserving the privilege of extending to said principal a running credit in excess of said sum of $10,000 dollars and of extending at any time or times to said principal, credit in excess of said sum, all without releasing or discharging thereby the above named sureties from the obligations of this bond:

"Now, Therefore, the condition of this obligation is such that if the above bounden principal, his heirs, executors or administrators shall faithfully comply with said agreement and shall well and truly pay or cause to be paid to the above named Jos. Schlitz Brewing Company, its successors or assigns all sums of money which may or shall be owing to said Jos. Schlitz Brewing Co., at the time or times when the same shall become payable, according to the agreement aforesaid, and the regulations endorsed on the back hereof, without fraud or delay, then this obligation to be void, otherwise to be and remain in full force and virtue; it being expressly understood that the above named sureties shall, under all circumstances, be liable to the obligee for so much of the indebtedness of the principal as is not in excess of the amount of this obligation, but no more, and that the discharge of

this obligation shall not release the principal from the payment of any indebtedness due from him to the obligee in excess of such amount.''

The by-laws, rules, etc., referred to in the bond stated the authority of agents, provided that no order or agreement for the purchase of beer would be binding until received and accepted by plaintiff at Milwaukee; prescribed credits for returned containers and certain terms of sale, other than prices. The ''special agreement'' referred to in the bond fixed the prices to be charged and paid for beer. These prices were proved orally. Beginning with the order referred to, the Poultry & Game Company, of which Brockman became the president, ordered from plaintiff large quantities of beer which it received and sold. The business was continued on a large scale for nearly six years and was terminated by plaintiff by a notice of which no complaint is made. At the time of the termination of the arrangement there was due plaintiff, according to the agreed price, the amount for which it recovered judgment, $9472.50.

Several grounds are relied upon for reversal.

I. The total amount of beer sold to the Poultry & Game Company was very large. The gross amount billed during one month which, it seems, is illustrative of the business done, was over $14,000. The net price was over $6300. The balance sued for probably represents the net due for the last few weeks before the notice of termination was given by plaintiff. It is not contended the sale of beer was illegal at that time, nor that it ran counter to the then public policy. It is argued the contract to purchase was *ultra vires* of the Poultry & Game Company. The charter of that company, as incorporated in *1893*, disclosed it was then incorporated to deal in dressed poultry, game and country produce. The representation as to the formation of a corporation in 1905 seems to have been untrue. The charter does not expressly invalidate transactions outside the charter powers. [St. Louis Drug Co. v. Robinson, 81 Mo. l. c. 26.]

The contract has been fully executed by plaintiff. The Poultry & Game Company has received and had full benefit of the shipments of beer represented by the sued for balance.

1. With respect to estoppel to plead *ultra vires* to a contract fully executed on one side defendants rely upon the Federal rule, in the main. This court **Ultra Vires: Executed Contracts.** and the courts of appeals of this State long since adopted the rule in force in most of the states which we said in Millinery Co. v. Trust Co., 251 Mo. l. c. 579, had been tersely stated by Rombauer, P. J., in Winscott v. Inv. Co., 63 Mo. App. l. c. 369, to be that: "the defense of *ultra vires* is not admissible where the contract has been fully executed on one side, unless it is a contract expressly prohibited by law." Other decisions of like import are: First National Bank v. Guardian Trust Co., 187 Mo. l. c. 522 et seq. and cases cited; Cass Co. v. Ins. Co., 188 Mo. l. c. 13 et seq., and cases cited; St. Louis v. Railroad, 248 Mo. l. c. 27; Kellogg-Mackay Co. v. Havre Hotel Co., 199 Fed. l. c. 733, 734, and cases cited; Fletcher's Cyclopedia, Corporations, sec. 1543, p. 2609, et seq.; L. R. A. 1917A, p. 749 et seq.; 14A Corpus Juris, p. 319, sec. 2169, et seq. The principle extends to executed contracts for the purchase of goods in which the corporation has no charter authority to deal. [Erb v. Yoerg, 64 Minn. l. c. 465; Re Assignment of Pendleton Hardware Co., 24 Ore. l. c. 332; Whitehead v. Am. L. & B. Co., 70 N. J. Eq. 585; Iowa Drug Co. v. Souers, 139 Iowa, l. c. 79, 80; Albin Company v. Commonwealth, 123 Ky. l. c. 305, 306; Osmer v. Brokerage Co., 155 Mo. App. 211; Vermont Co. v. DeSota Co., 145 Iowa, l. c. 494, 495; Watts Mercantile Co. v. Buchanan, 92 Miss. l. c. 543, 544; Wrightsville H. Co. v. McElroy, 254 Pa. l. c. 429; Lemmon v. Rubber Co., 260 Pa. l. c. 32, 33.]

The Missouri cases cited as supporting a contrary view involved questions concerning the enforcement of executory *ultra vires* agreements and are thereby dis-

tinguished from the instant case. [See, Fishing & Hunting Club v. Kessler, 252 Mo. l. c. 437; Bowman Dairy Co. v. Mooney, 41 Mo. App. l. c. 676.] In Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. l. c. 741 et seq., the United States Circuit Court of Appeals was considering an executory feature of the contract before it when it discussed the rule in this State. The court said: "Of course, the present question is whether the Missouri Company's acquisition of stock of the Kansas Company and the incurrence of the stockholders' liability which is inseparable from ownership of the stock—a liability which has not been discharged and remains an executory obligation—was void *in toto* or only voidable; in other words, whether the act of a corporation which is not within the scope of its corporate powers, and is therefore prohibited (citations) can have or be given the effect of placing upon the corporation an enforceable executory obligation." (l. c. 742). It is clear this was understood in the case of Millinery Co. v. Trust Co., supra, and that the case was not given approval as authority for the broad doctrine it is here contended it announced. In fact, in the Millinery Co. case, the exact contrary was expressly stated to be the rule in this State.

2. It is argued the provisions of Section 9749, Revised Statutes 1919, and Section 7 of Article XII of the Constitution of the State to the effect that "no corporation shall engage in business other than that expressly authorized in its charter, or the law under which it may have been or may hereafter be organized," preclude a holding that defendants are estopped to set up that the contract in this case was *ultra vires* of the Poultry & Game Company. The provisions quoted were in existence at the time the cited decisions of this court were made and the doctrine of estoppel has been applied when the constitutional provision mentioned was before the court. [Summet v. Realty & Brokerage Co., 208 Mo. l. c. 512, 513.] In fact, the violation of some restriction upon the exertion of power by a corporation is the essence of *ultra vires* action. It would be strange if

*Estoppel.*

this court and the Courts of Appeals would so often apply the doctrine of estoppel in the face of the provisions quoted if their effect is to render that doctrine inapplicable in this State. Such is not the case. The question is one often decided. Those provisions but incorporate the applicable common law, which is that corporations are restricted to the powers given by their charters. The exception to the general rule of estoppel made in case a charter or provision of law "expressly" prohibits the making of a contract by a corporation cannot be grounded upon the common law or provisions declaratory of it, as are those quoted. The question under these same Missouri provisions was discussed by the United States Circuit Court of Appeals for this circuit in St. Avit v. Kettle River Co., 216 Fed. l. c. 875, 876, and a conclusion adverse to appellants' present claim was reached.

In National Bank v. Matthews, 98 U. S. l. c. 627, the record under review was that of this court in Matthews v. Skinker, 62 Mo. 329. In one paragraph of its opinion the Supreme Court of the United States assumed the correctness of the holding of this court that a deed of trust acquired by a national bank by the purchase of the note it secured was thereby brought within Section 5137, U. S. R. S. 1899 (13 Stat. 99), which prohibited a national bank from holding "the possession of any real estate under mortgage," but nevertheless held the debtor could not be heard to say the security was unenforceable because *ultra vires* of the bank. The court cited many authorities and quoted with approval from Sedgwick on Statutory and Constitutional Construction, 73: "Where it is a simple question of authority to contract, arising either on a question of irregularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded upon it to question its validity. It would be in the highest degree inequitable and unjust to permit a defendant to repudiate a contract, the benefit of which he retains." The court pointed out that the statute did not declare the security void; that if it had been intended it should be so, Congress easily could

have said so; that other statutes specifically prescribed forfeitures when it was desired they should result; that the whole statute was to be examined in determining whether a contract in contravention of it was intended to be rendered void. The judgment of this court in that case was reversed.

In Michigan a statute provided that the articles of association should state "the purpose or purposes for which the corporation is formed, and it shall be unlawful for said corporation to divert its operations or appropriate its funds to any other purpose, except as hereinbefore provided." It was held (Butterworth & Lowe v. Milling Co., 115 Mich. 1. c. 3) that a transgression of this prohibition might subject the offending corporation to action by the State "or other appropriate proceeding;" but did not prevent the application of the doctrine of estoppel to contracts *ultra vires* of the corporation.

In Texas a statute provided: "No corporation created under the provisions of this title shall employ its stock, means, or other property, directly or indirectly, for any other purpose than to accomplish the legitimate purpose of its creation." A corporation organized to manufacture and vend cotton and woolen goods loaned money to one Bond and took his note. When sued, Bond pleaded *ultra vires*. After approving the general rule that the execution by one party to an *ultra vires* contract estops the other to plead *ultra vires* as a defense, the court (Bond v. Mfg. Co., 82 Tex. 1. c. 313) dealt with the question of the effect of the quoted statute as follows: "It is true that a distinction is made between the act of a corporation which is merely without authority and one which is illegal. In the one case, it is a question of authority; in the other, of legality. A corporate act becomes illegal when committed in violation of an express statute on a specific subject, or when it is *malum in se* or *malum prohibitum,* or when it is against public policy. [Beach on Priv. Corp. sec. 438; Taylor on Priv. Corp. secs. 293, 295.] If, therefore, the transaction here engaged in by appellee was

not merely beyond its powers but was also illegal, in the
sense stated, the contention of appellants should prevail.
It will be noted that Article 589  . . .  is a general
statute.  It is merely declaratory of the common law
by which corporations are strictly confined in their powers
to the limits and fixed purposes for which they were cre-
ated.  The language of the statute at most emphasizes
the doctrine of the common law.  To such 'general pro-
hibitions against the doing by corporations of acts beyond
the scope of the corporate powers, courts appear to give
little effect.'  [Taylor on Corps. sec. 295; Curtis v.
Leavitt, 15 N. Y. 54; Halstead v. Mayor, 3 N. Y. 430-433.]
And in many cases (and these in our opinion the most
authoritative) when the statute has a specific but at the
same time an implied application, the doctrine of estop-
pel against the beneficiary of an executed contract is not
changed.''  The court cites National Bank v. Matthews
as typical of this last-mentioned class.  A like holding was
made with respect to a similar statute in Harris v. Gas
Co., 76 Kan. l. c. 762.  The court quoted and approved
1 Clark & Marshall on Priv. Corp. sec. 225b, to the effect
that:  ''A provision in a general corporation law that no
corporation created thereunder shall employ its assets
for any other purpose than to accomplish the legitimate
objects of its creation is merely declaratory of the com-
mon-law rule  . . .  and does not amount to such ex-
press statutory prohibition of *ultra vires* loans and other
transactions as to render them illegal instead of *ultra
vires* merely.''.  In 2 Morawetz on Corporations, sec.
658, it is stated that provisions in charters of corporations
and in general laws ''prohibiting corporations from
exercising any powers except those conferred by their
charters'' are ''merely declaratory of the general com-
mon-law prohibition against any exercise of corpor-
ate powers which has not been authorized by the
Legislature; and there is no reason for supposing
that the Legislature intends to give it any greater force
or effect than the common-law rule.''  He points out
that statutes of the kind are generally so construed or

"ignored" by the courts. In Erb v. Yoerg, 64 Minn. l. c. 465, it was held that one who had sold and delivered goods to a corporation on an *ultra vires* contract could not replevin them since the corporation was estopped to plead *ultra vires* though a statute made an offense of any "diversion of corporate property to other objects than those specified in the articles." While the quoted constitutional provision would prevent any general legislative authorization contrary to its terms, yet its restrictive effect upon corporations is no greater than its language imports when given its ordinary meaning. [Black on Interpretation of Laws (2 Ed.), sec. 11, p. 25; Sedgwick on Constr. Stat. & Const. Law (3 Ed.) p. 19.]

It is argued the decision in Orpheum Theatre Co. v. Brokerage Co., 197 Mo. App. 661, is in conflict with these views. That it contains language apparently justifying such a suggestion cannot be denied. Yet that case involved the enforceability of a voluntary subscription by a brokerage corporation to a theatre corporation to aid in building a home for the latter. The court stated the brokerage company had "no interest in the matter which could be subserved" by the erection of the theatre building. In other words, as held by the Kentucky Court of Appeals in a like case, the brokerage company received no benefit peculiar to it, and therefore had not received anything from the contract which could render applicable the doctrine of estoppel. In so far as the remainder of the opinion in the case cited is concerned it is, if not *obiter,* out of accord with the settled rule in this State. It results that this point is ruled against appellants.

II. The Statute of Frauds has no application. The action is for a balance due for goods actually sold and delivered. Whether or not the contract under which the parties proceeded was obnoxious to that stat-

**Statute of Frauds:**
**Oral Contract.** ute by reason that it was not to be performed within a year, the beer for the price of which plaintiff now has judgment was actually received. Plaintiff had fully performed, and the statute is no defense. [Bless v. Jenkins, 129 Mo. l. c. 657; Cole-

man v. Forrester, 178 Mo. App. l. c. 63; Montgomery v. Gann & Mathers, 51 Mo. App. 187; Winters v. Cherry, 78 Mo. 344; Mitchell v. Branham, 104 Mo. App. l. c. 484; Bird v. Bilby, 202 Mo. App. 212; McGinnis v. McGinnis, 274 Mo. l. c. 297.]   The action is for the price of goods delivered and received under the oral contract, and the Statute of Frauds is not an answer. [Kratz v. Stocke, 42 Mo. l. c. 358; Smith v. Davis, 90 Mo. App. l. c. 538; Tucker v. Dolan, 109 Mo. App. l. c. 453; 25 R. C. L. p. 707, sec. 351.]   The distinction made between part performance and full performance by one of the parties is pointed out in Bird v. Bilby and Tucker v. Dolan, supra.   The effect of the bond in this case is to guarantee payment of a balance which might become due on a running credit under a contract to furnish beer to the Poultry & Game Company.  The furnishing of the credit is the consideration of the bond, and that it is so appears sufficiently in the bond.

III.  It is argued the contract is void for want of mutuality.  Hudson v. Browning, 264 Mo. 58, is cited.  In the contract in that case Hudson, defendant, agreed to receive 200,000 railroad ties. **Executed Contract: Mutuality.** The contract did not obligate plaintiff to furnish any number of ties.  It was held there was no mutuality and plaintiff could not recover damages for loss of profits.  That is not this case.  Here, though appellant's view be taken as correct with respect to the contract when first entered into, the subsequent shipments and acceptances made applicable the principle that the act of one party on the faith of the unilateral promise of the other supplies the consideration.  [Typewriter Co. v. Realty Co., 220 Mo. l. c. 525, et seq.]

For the reasons given the judgment is affirmed.  All concur, except *Elder, J.*, not sitting.