**James E. TRIMMER, Appellant,**

**v.**

**Vaughn V. SHORT and Superior Metal Products Co., a corporation, Respondents.**

**No. 25830.**

Missouri Court of Appeals, Kansas City District.

March 5, 1973.

William B. Teasdale, and Gerald B. Renyer, Kansas City, for appellant.

A. Glenn Sowders, Jr., Kansas City, for respondents.

Before SHANGLER, C. J., and PRITCHARD, DIXON, CROSS, SWOFFORD and WASSERSTROM, JJ.

PRITCHARD, Judge.

In Count I of his original petition for damages "on breach of contract and wrongfully withheld profits", plaintiff pleaded that before December 7, 1965, Superior Metal Products was a sole proprietorship, wholly owned and operated by defendant Vaughn V. Short, who in November, 1965, agreed with plaintiff to incorporate Superior and offered and agreed to sell to plaintiff 49% of its stock, the percentage being later reduced to 40% which

offer was agreed to and accepted by plaintiff. Superior was incorporated on December 7, 1965, and in January, 1966, plaintiff paid in $6,000.00 according to the purchase agreement, "the shares to be delivered to plaintiff no later than 6 months thereafter, and defendants agreed to allow plaintiff to pay the balance of the purchase price for a 40% interest over a 5 year period." In July, 1966, and thereafter, plaintiff offered and stood willing to pay the balance of the purchase price of the shares and demanded their issuance but both defendants, in July, 1966, and thereafter, and in January, 1967, declined and unequivocally refused to issue the shares to plaintiff. After the close of calendar year 1966, the obligation of defendants to plaintiff for 40% of the gross profits [amended to "net" profits] "(before taxes) has constituted an open and current account between plaintiff and defendants and has become due the plaintiff under the terms of said contract and under said account, as and for said 40% of the profits of the year, 1966." Count II was for an accounting of the corporate profits for 1966. Count III was for money had and received in the balance amount of $5,000.00 paid by plaintiff for the shares, which defendants acknowledged to be a loan, and upon which the court entered judgment. No issue is here presented as to Count III.

By amendment to Count I of the petition, plaintiff incorporated the above (and here relevant) allegations, and added Paragraphs 18 and 19. In Paragraph 18, plaintiff further pleaded that as an additional basis upon which a portion of the net profits before taxes are due him, that Vaughn V. Short, individually and on behalf of Superior agreed to pay plaintiff, in addition to his salary, 40% of the net profits (before taxes) earned by the business during 1966, for services to be performed by plaintiff in behalf of defendants; and that "said employment performed by plaintiff continued throughout the year 1966 and thereafter and that plaintiff duly performed all the conditions on his part to be

performed under said contract and employment." In Paragraph 19, plaintiff pleaded that the agreement set forth in Paragraph 18 was entered into in December, 1965, in Independence, Missouri, and that defendants recognized it and in March, 1967, issued him a check for $3,000.00 as partial payment of the profits due under the agreement, the check being predated as of December 31, 1966, and upon which payment was stopped in April, 1967. Under Count I (as amended) the prayer was for a determination of the rights of the parties with respect to the profits and account, and for judgment that defendants are indebted to plaintiff for 40% of the net profits before taxes for 1966, with interest thereon at 6% per annum from March 8, 1967, and for costs.

By second amended answer, defendants pleaded by leave of court, that on May 23, 1969, plaintiff testified by deposition that all his alleged agreements, and that as a further affirmative defense, "all such alleged agreements fall within the statute of frauds as set forth in Sec. 432.010, RSMo 1959, V.A.M.S., and that any evidence pertaining thereto is inadmissible." Trial was had beginning May 27, 1969, to the court which took the case under advisement and on May 21, 1971, the court entered judgment against plaintiff (except for the $5,000.00) upon the ground that his claims were barred by the statute of frauds, and "There was no writing which would satisfy the statute. Further, there was no performance of the alleged agreement which would excuse the plaintiff from the burden placed upon him by the statute."

It is noted that plaintiff's petition is not one for specific performance of the alleged contract to sell him shares in the corporation. At most, the allegations form a basis in part for the alternative allegation in Paragraph 18, supra, of an (oral) employment contract for the year 1966, under which plaintiff was to be additionally compensated for his services to be performed (and allegedly actually performed) during that period. It is unnecessary to consider

plaintiff's Points II and III by which he claims that a writing signed by defendant Vaughn in 1965 constitutes the basis for his claim to 40% of the net profits. That writing (plaintiff's Exhibit 9) although incomplete and illegible, refers only to the matter of selling shares, not employment. The main issue raised by the pleadings and the judgment of the court is whether plaintiff sufficiently performed his alleged oral agreement so as to remove it from the operation of the statute of frauds.

Section 432.010, RSMo 1969, V.A.M.S., provides, "No action shall be brought * * * to charge any person * * * upon any agreement that is not to be performed within one year *from the making thereof,* unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, * * *." (Italics added.)

Plaintiff pleaded in Paragraph 19 of his petition that the agreement was made in December, 1965. His evidence indicates the date to have been December 5, 1965, he acknowledged that the agreement was oral, and that the performance was to begin on January 1, 1966. Whether the law of this state is that the performance which could remove the oral agreement from the operation of the statute, supra, must be done within a year from the making of the oral agreement is in somewhat of a state of confusion. Anno. 6 A.L.R.2d 1053, pp. 1120, 1135–1136. Does the twenty-six day period which must have elapsed before performance was to begin cause the statute to be operative because plaintiff could not fully perform within one year from the making of the agreement? A review of the history of the decisions in this state may be helpful.

In the early case of Pitcher v. Wilson, 5 Mo. 46 (1837), the evidence was that some years since (the agreement) plaintiff agreed to serve the defendant five years, and that he had actually served the defendant the time agreed on. The court applied the statute of frauds in reversing the judgment for plaintiff. In Johnson v. Reading, 36 Mo.App. 306 (1889), the oral agreement was that if plaintiff would surrender certain leased lands to defendant and put him in possession thereof, defendant would pay plaintiff's (future) rents to one Block. Plaintiff did put defendant in possession and received $100.00 for the first year, 1882, but defendant refused to pay the rents which became due in the next three years. Plaintiff paid to others these rents and sued defendant to recover them under the oral agreement, to which defendant interposed the defense of the statute of frauds because (his) performance could not take place within one year of the making of the agreement. The court (loc. cit. 315) said, "We may concede that it is fairly deducible from all cases decided in this state touching contracts falling within the various sections of the statute of frauds, that where the contract has been fully performed on one side, and the other party had the benefit of such performance, recovery may be had even upon the contract itself. Among the cases above cited, Pitcher v. Wilson alone is opposed to that view, while Blanton v. Knox [3 Mo. 342], Suggett v. Carson [Cason] [26 Mo. 221], Self v. Cordell [45 Mo. 345], Tatum v. Brooker [51 Mo. 148], and Winters v. Cherry, [78 Mo. 344], seemingly support it." (Bracketed citations added.) The court adhered to Pitcher v. Wilson, but certified the case to the Supreme Court because of "the questions of the gravest importance" and the apparent conflict in the decisions. The case, then called, Nally, Administrator, v. Reading, 107 Mo. 350, 17 S.W. 978 (1891), was decided and the judgment in Johnson v. Reading which held the oral agreement was within the statute of frauds, was affirmed "inasmuch as the contract is not to be performed, and cannot be performed, according to its terms, within one year from the time of its making." The Nally court said further, "If there are any au-

thorities in conflict with the views here announced we overrule them."

The next case, apparently, in the Supreme Court on the subject is Reigart v. Manufacturers' Coal & Coke Co., 217 Mo. 142, 117 S.W. 61 (1909). That case involved a written unilateral option contract to buy an unspecified amount of coal, and it was held that a contemporaneous oral agreement by which plaintiff was to work up a market for defendant's coal could not make enforceable the option contract because the oral agreement was void under the statute of frauds, even though plaintiff had performed his part of the oral agreement by making a market for the coal, because the agreement was not to be performed within one year from the making thereof. It is with the case of Joseph Schlitz Brewing Co. v. Missouri Poultry & Game Co., 287 Mo. 400, 229 S.W. 813 (1921), that a departure appears to have been made from the rule of the Pitcher v. Wilson and Nally cases. The statute of frauds was there held not to be a defense to an action for the price of goods sold and actually delivered under an oral contract not to be performed within a year, since the plaintiff had fully performed. It was commented in Blue Valley Creamery Co. v. Consolidated Products Co., (CA 8th) 81 F.2d 182, 188, "The Supreme Court of Missouri may not have specifically overruled Pitcher v. Wilson, but the decision in Schlitz Brewing Co. v. Missouri Poultry & Game Co., 287 Mo. 400, 229 S.W. 813, 816, is certainly inconsistent with the rule announced in the Pitcher-Wilson Case."

In the courts of appeal of this state, the statute of frauds has been applied diametrically opposite to the Pitcher-Wilson case, and in some cases exactly in accord with it. It seems, practically, that it should make no difference whether performance was to begin contemporaneously with the oral agreement and to extend beyond one year, or whether the performance was to begin at some time after the oral agreement and to extend for just one year (as here). In either event, a rigid application of the statute would result in no recovery because performance could not be completed within one year of the "making" of the agreement. "The year, as fixed by the statute, begins on the date of the agreement, and ends on the date the agreement designates for the completion of full performance." Truskett v. Rice Bros. Live Stock Commission Co., Mo.App., 180 S.W. 1048, 1049[1].

Before the Joseph Schlitz Brewing Co. decision, there were many cases in this state recognizing the rule that full performance takes an oral contract not to be performed within one year out of the statute of frauds. See the list at Anno. 6 A. L.R.2d 1117. There were also cases denying recovery, or indicating so, in the same period of time. One of these was Aylor v. McInturf, 184 Mo.App. 691, 171 S.W. 606 (1914). There defendant verbally agreed to buy a lease, and the money therefor ($5,000.00) was not to be paid until after the expiration of a year. Defendant was allowed by plaintiffs to take possession of the leased land and to mine it, which he did by extensive cuttings. Upon suit to recover the purchase price for the sale of the mining lease, defendant interposed the defense of the statute of frauds, held to be good. But note that in Bird v. Bilby, 202 Mo.App. 212, 215 S.W. 909 (1919), it was said that the writer of Aylor misconceived the scope and meaning of the Reigart case (supra) as to a change in the rule that full performance of a contract not to be performed within a year will remove the contract from the operation of the statute of frauds. Another case denying the right to maintain an action is Johnson v. American Paper Products Co., Mo.App., 201 S.W. 651 (1918), where the oral contract for employment for one year to begin in the future (much as here) was actually performed by plaintiff salesman.

Cases holding that the statute is not a bar to recovery if there has been full performance of the oral contract are these: Marks v. Davis, 72 Mo.App. 557 (1897), where (as here) an oral contract of em-

ployment to begin at a future date was held not to be within the statute of frauds so far as to bar the recovery by the employee of money his employers had agreed to pay him if the profits on sales exceeded a certain amount, and the employee had completely performed his part of the contract; Cochran v. Jefferson County Lumber Co., Mo.App., 132 S.W.2d 32 (1939), where the oral contract for services as secretary and business manager of the company was made at the time of incorporation, but no length of time of employment was specified. Suit was for a running account for a portion of unpaid bonuses as orally agreed, and plaintiff proved complete performance on his part for the entire period of employment. The court held that the statute of frauds thus did not apply, and adverted to what is the similar language of Johnson v. Reading, supra, "It is well settled that an oral agreement, even though otherwise falling within the application of the Statute of Frauds, is removed from the prohibition of the statute where it has been fully performed by one of the parties thereto and the other party has had the benefit of such performance." (Citing cases.) (Loc. cit. 132 S.W.2d 36.) Compare also: Maupin v. Chicago, R.I. & P. Ry. Co., 171 Mo. 187, 71 S.W. 334 (1902), an action in ejectment where an equitable defense of full performance was allowed when owners of a 10-foot strip along the rear of their lots verbally agreed to permit a switch track to be placed thereon after they solicited the railroad company to construct a railroad in the alley to the rear of their lots, which the company did construct; Denny v. Brown, Mo., 193 S.W. 552 (1917), a suit to compel an executor to inventory personal assets of the deceased, which the defendant executor claimed personally by reason of a settlement with his father for partnership accounting. The court said, " 'Neither was the settlement void as being within the statute of frauds, because there had been complete performance on the part of James R. Brown which took it out of the statute of frauds.' "; Cape Girardeau & C. R. Co. v. Wingerter,

124 Mo.App. 426, 101 S.W. 1113, 1114, and Bless v. Jenkins, 129 Mo. 647, 31 S.W. 938, 940.

At 37 C.J.S. Frauds, Statute of § 251, p. 762, it is said that "the great weight of authority supports the rule that the statute of frauds has no application where there has been a full and complete performance of the contract by one of the contracting parties, and the party so performing may sue on the contract in a court of law; * * *.", and see also 37 C.J.S. Frauds, Statute of § 254, p. 774, "However, such contracts may be taken out of the statute by complete performance by one party thereto, regardless of how many years may have to elapse before the agreement is performed by the other party; * * *"; 2 Corbin on Contracts, Sec. 457, p. 575, and Restatement of the Law, Contracts, Secs. 198, 219. It must be concluded that since the decision in the Joseph Schlitz Brewing Co. case, supra, Missouri has joined the weight of authority noted in C.J.S. above, "Plaintiff had fully performed, and the statute is no defense." (Citing cases.) Loc. cit. 229 S.W. 816 [3]. There remains to be examined the matters of whether there was proof of the oral agreement, full performance thereof, and whether there was a benefit to Superior.

Plaintiff and Vaughn V. Short became associated in Mr. Short's sole proprietorship metal form manufacturing business in September, 1964, after plaintiff left his former (and similar) employment with Metal Specialties, Inc. The discussion plaintiff then had with Mr. Short was "that I would go to work for him for a period of approximately twelve months, and at the end of this time if I felt that I could increase his business, if I did this and fulfilled my duties, that at the end of this twelve months that I would want to participate in 50 percent of the business and also in the net profits of business." Mr. Short acknowledged that there was a discussion about plaintiff buying into the business, and testified, "Well, right from the word

'go' he didn't want to just work. He wanted to work for something of his own, and this was carried out through quite a long period of time before we finally agreed on how much and what percent and all. And then even after that it was changed." Plaintiff's salary was initially $150.00 per week (increased in 1966 to $175.00 per week). Mr. Short acknowledged that plaintiff was a good salesman and that plaintiff stated that "We are going to double all of this" when he first came to him. Plaintiff's testimony was that he believed the business about doubled in 1965.

In December, 1965, there were discussions about incorporating the company, which was done, and of plaintiff buying stock in it. The assets were valued at $60,000.00, and the first percentage plaintiff was to have was 49%, which was modified to 40% with an agreement that the two would contribute a total of $10,000.00 as operating capital on a 60–40 percentage basis. On January 6, 1966, plaintiff issued his $4,000.00 check to Superior which had on it the notation "for stock". Mr. Short did not recall the notation being on the check and took the position it was a loan, so recorded by him on the books of the corporation. Plaintiff's version that his check was for stock is somewhat corroborated by Floyd R. Brown, Jr., the corporation accountant who was present at a meeting with plaintiff, Mr. Short and June Short, when the matter of corporate assets and stock issuance was discussed. It was his "understanding" that for the $10,000.00 working capital to be deposited, $6,000.00 from Mr. Short and $4,000.00 from plaintiff, stock would be issued. Later, plaintiff contributed $2,000.00 more cash, and Mr. Short also contributed cash to bring the working capital to $15,000.00, but $1,000.00 was repaid plaintiff apparently to pay an income tax estimate. Plaintiff's remaining contribution, $5,000.00 remained in the company and forms the basis of the judgment on Count III, which is here not questioned. However, there was a check dated December 31, 1966, for $3,000.00, issued by Superior to plaintiff in March, 1967. Plaintiff's position is that the check was for a part of the profits as stated to him by Mr. Short. Payment was stopped on the check, because, as Mr. Short testified, there was no money in the bank, and his position is that the check was issued in part payment of the $5,000.00 loan.

As to the alleged oral agreement for the sharing of profits, plaintiff testified: "I agreed to accept 40 percent instead of 49 percent, and also at this meeting Mr. Vaughn Short stated to Mr. June Short that he wanted it to go to a matter of record that I would receive 40 percent of the profits of the corporation if I bought any stock or if I ever put any money into the corporation or not." Although Mr. Short's testimony at trial was that plaintiff was not to receive a percentage of the profits unless he bought into the company (after six months, to allow Mr. Short capital gains treatment on the sale) which purchase was not made, his deposition testimony is illuminating: "Q. What did you state to any other persons that your arrangement was with Mr. James Trimmer regarding the sharing of profits in the company of Superior Metal Products? A. Well, it was kind of standard knowledge that he was to receive profits and it was kind of standard knowledge that he was going to buy in. Q. What per cent of the profits was it standard knowledge that he was to receive? A. 40 per cent was roughly what we talked about the last time. Q. Did he ever receive 40 per cent of the profits from Superior Metal Products? A. No."

Pursuant to the oral agreement, plaintiff continued in the employment of Mr. Short and also in the employment of the corporation after it was organized, until he resigned on March 8, 1967. He performed the same duties that he did prior to the incorporation in selling, signing checks, making up payrolls and checks therefor, helping with the collecting, and in times of need, he ran the punch presses and made some deliveries. In 1966, Mr. Short was

absent sometimes as high as two or three weeks at a time, and in his absence plaintiff would operate the company. Initially for 1966, Mr. Brown prepared the profit and loss statements on the accrual basis of accounting up through August. There was a loss of $1,293.89 in January, but subsequent months show these profits: February, $3,472.31; March, $336.33; April, $3,993.98; May, $4,100.50; June, $4,636.57; July, $11,630.13; and August, $3,663.68. For the remainder of the year Mr. Short thought the profits were around $3,600.00, and upon change of accountants in August, Mr. Hardin reconstructed the records on a cash basis, which showed, as per the corporate tax return, a taxable income of $20,694.38.

From all of the foregoing evidence, it is clear that plaintiff has sustained his burden of proof that there was an oral contract that he share in the profits of the corporation in return for his acknowledged competent services. His testimony does not stand alone but is bolstered by the deposition testimony of Mr. Short that there was to be a 40% share of the profits due plaintiff, who did not originally join Mr. Short for the purpose of receiving wages only. Although the agreement to purchase stock was never consummated the fact that he did put money into the enterprise tends to show that plaintiff had an expectation of income above and beyond his salary. Additionally, the evidence shows that for a time in the early part of 1966, plaintiff and Mr. Short were engaged in a separate window fabrication enterprise from which the profits were shared 40% to plaintiff, 40% to Mr. Short, and 20% to the corporation, Superior, for reimbursement of materials, costs, etc. He performed his duties faithfully, and the reasonable inference to be derived from the fact of profits of the corporation is that his services were highly beneficial to it. His services were not solely referable to his salary compensation of $150.00 or $175.00 per week, which in these economic times is modest, considering also that plaintiff had a wife and four children to support. In overruling defendant's "motion for directed verdict", the trial court observed that there had been a prima facie case made out of an agreement in December, 1965, pertaining to both profits and stock ownership and performance thereafter. Certainly, plaintiff's proof is sufficient. See O'Day v. Van Leeuwen, 354 Mo. 604, 190 S.W.2d 263, 266 [5, 6], which, although an equity suit, held that the testimony of even one witness is sufficient to establish an oral contract for the conveyance of land against the statute of frauds. One witness was there corroborated by the testimony of another. See also 37 C.J.S. Frauds, Statute of § 284, p. 816. It follows, then, that under all the facts and the law, plaintiff is entitled to recover, and that he, having fully performed, the statute of frauds is no bar to his action.

There is insufficient evidence in the record as to a basis for a finding of the dollar amount which plaintiff would be entitled to as his share of the net profits, or even as to whether the accrual method or the cash method of accounting is proper for computation of profits. This necessitates a remand of the case for further proceedings for accounting under Count II of the petition.

The judgment upon Count I of the petition is reversed and the case is remanded with directions to enter a judgment thereon for plaintiff and against defendants for forty per cent of its net profits for the calendar year 1966, and for further proceedings for accounting under Count II of the petition.

All concur.

CROSS, J., not participating.