452 F.Supp. 529 (1978)
BRECKENRIDGE HOTELS CORP., a Missouri Corporation, and Breckenridge's Inn of the Spanish Pavilion, Inc., a Missouri Corporation
v.
REAL ESTATE RESEARCH CORPORATION, a Delaware Corporation.
No. 76-920C(2).
United States District Court, E. D. Missouri, E. D.
June 20, 1978.
*530 Richard E. Coughlin, Sumner, Hanlon, Sumner, MacDonald, Nouss, Clayton, Mo., for plaintiffs.
Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This diversity action was tried to the Court sitting without a jury. Plaintiffs are Missouri corporations with their principal place of business in Missouri. Defendant is a Delaware corporation with its principal place of business in Illinois. The amount in controversy exceeds Ten Thousand Dollars ($10,000) and the Court has jurisdiction pursuant to 28 U.S.C. § 1332. The Court has fully considered the testimony and the record in its entirety and the following discussion constitutes the Court's findings of fact and conclusions of law.
The background of this controversy involves the Spanish Pavilion, a complex of restaurants, theaters, meeting and entertainment rooms initially erected by the Spanish government for the New York World's Fair. After the close of the Fair, the structure was dismantled and shipped to St. Louis, Missouri, where it was erected upon property owned by Civic Center Redevelopment Corporation. The building was operated through a mortgage arrangement with Carondelet Savings & Loan Association. The Pavilion did not prove commercially feasible and operations ceased, with Carondelet foreclosing and taking possession.
Plaintiff Breckenridge Hotels Corporation[1] was at times pertinent, engaged in the hotel business, including the building, purchasing, selling and operating of such properties. In 1970 its president became interested in the Spanish Pavilion, envisioning erection of a nineteen floor tower with three hundred and four hotel rooms over *531 the courtyard of the Pavilion. Preliminary work by an architect indicated that such a project would be structurally feasible and the construction cost estimate indicated to plaintiff that it would be financially feasible. However, the Pavilion property was the subject of litigation and plaintiff had to postpone action.
By 1973 the underlying disputes had been resolved and plaintiff entered into negotiations with Carondelet. Plaintiff intended to finance independently the cost of personalty which would be necessary and to defray the interest costs during construction. The remaining costs, consisting of the acquisition of the land lease from CCRC, acquisition of the existing Pavilion from Carondelet, and construction funds, were to be obtained by a loan from Carondelet. The cost of the purchase of the land lease and Pavilion building was three and one half million dollars and plaintiff had estimated construction costs to be five and one half million dollars, so that a loan of approximately nine million dollars was required. This was beyond Carondelet's loan capability, so a participation agreement was made with Community Federal Savings & Loan Association. Because of federal requirements Community Federal could not be involved in a loan of more than seventy five per cent of the value of the secured property. Thus Carondelet required, as a condition of making the loan, that plaintiff furnish an MAI (American Institute of Real Estate Appraisers) appraisal in the amount of at least Twelve Million Dollars. These general outlines of the proposed financing were apparently worked out by the Summer of 1973.
Defendant is a corporation doing business nationally as a real estate appraisal service and its resident vice president was Richard Odebrecht, an MAI. Community Federal suggested the names of several MAI appraisers acceptable, and defendant was selected with the approval of plaintiff, which paid the costs of the appraisal. Although the appraisal itself was to be prepared for and directed to Carondelet, the appraiser's primary contact was with plaintiff.
In late June, 1973 defendant sent a written proposal to plaintiff offering to undertake the appraisal for a stated consideration and an agreement was reached to make a preliminary evaluation for a one thousand dollar fee. On July 20, 1973 Odebrecht advised plaintiff that a preliminary analysis indicated that the appraisal would probably be in the minimum amount of Twelve Million Dollars. On July 23, 1973 this was confirmed by letter, in which Odebrecht also stated that "this letter cannot be interpreted as an appraisal of the property." On August 28, 1973 defendant issued its formal appraisal report in the amount of Twelve Million Two Hundred Fifty Thousand Dollars ($12,250,000.00).
In September of 1973 plaintiff entered into various contracts with Carondelet, including a sales contract for the purchase of the Pavilion and an option contract, and Carondelet issued its commitment to loan Nine Million One Hundred Eighty Thousand Dollars ($9,180,000.00) at eight and one half per cent (8½%) interest. On November 6, 1973 plaintiff's architect issued his final statement of probable costs, which was in the amount of Five and One Half Million Dollars ($5,500,000.00).
In early November, 1973 an examiner, reviewing the records of Carondelet, discovered that a computation error had been made in defendant's appraisal report. Under local law, the Pavilion was to be entitled to favorable real property tax treatment. Defendant, in its expense estimate, had figured in the reduced taxes which would be payable, but then had computed the over-all tax savings separately and capitalized that savings in its final appraisal. This double treatment resulted in an artificially high appraisal.
Plaintiff's president asked Odebrecht to change the appraisal report by revising the estimates of occupancy and room rentals to be achieved, which would have increased the estimate net income and pushed the appraisal back up to the desired level. Odebrecht refused, saying that defendant would lose total credibility if he changed those figures. On November 30, 1973 defendant *532 issued its corrected appraisal of Ten Million Two Hundred Thousand Dollars ($10,200,000.00). The closing of the sale contract and loan agreement had been scheduled for no later than December 15, 1973, but, was delayed because the appraisal condition could not be met.
Plaintiff then decided to obtain a new appraisal based upon a separate feasibility study. A specialist firm, Laventhol-Horvath, was employed in January, 1974, and made its report on February 15, 1974. Plaintiff spoke to several appraisers. One advised, after a preliminary study, that he could be of no help. The appraisal firm of Hallauer-McReynolds was employed and, using the Laventhol-Horvath studies, reported on April 25, 1974 an estimated value of the property of Four Million Dollars. In June, 1974 bids from various contractors were received. The lowest bid was by McCarthy Brothers Construction Company and was in the amount of Eight Million Three Hundred Forty Six Thousand Two Hundred Dollars ($8,346,200.00).
Plaintiff then revised the plans for the project. To increase the income producing potential of the project and thus its value, three additional floors of rooms were added to the design. To overcome the high construction costs, a parking garage was eliminated from the project, the transfer level was changed, poured-in-place post-tension concrete was used instead of structural steel trusses, and there were other reductions in the mechanical and electrical parts of the contract. With these changes, the project was rebid at Six Million Six Hundred Seventy Seven Thousand Five Hundred Thirty Five Dollars ($6,677,535.00) in August, 1974. Plaintiff renegotiated the sale contract and loan agreement with Carondelet and eventually closed on August 6, 1974 with the loan amount being Eleven Million One Hundred Thousand Dollars ($11,100,000.00).
Plaintiff's testimony was that the original closing date could have been met. The hotel could have been completed and in operation no later than March, 1976. In fact the restaurants in the hotel were open one by one commencing July 1, 1976 but it was not until September 1, 1976 that the hotel was operable with all the restaurants and two-thirds of the rooms being opened.
Plaintiff's inability to meet the December 15, 1973 closing date caused several cost increases in the project. The construction costs were significantly higher than they would have been. Plaintiff was unable to obtain financing at Eight and One-half per cent (8½%) and paid Nine and One-half per cent (9½%) for its loan. Also the costs of purchasing the Pavilion was greater than the price provided by the original agreement. Although plaintiff seeks damages for lost profits, the Court does not find support for such a claim in the record. In sum, regardless of the cause, the delay suffered by plaintiff resulted in significant damages that are readily ascertainable.
Defendant, as a professional appraiser, was required to exercise reasonable care in preparing its report. See Westerhold v. Carroll, 419 S.W.2d 73 (Mo.1967). This duty of care extended to plaintiff, for whose benefit the report was prepared. In giving double treatment to the property tax benefits to be received, and in failing to adequately review the final report, defendant failed to exercise reasonable care and competence. The testimony indicated that professional appraisers could reasonable differ in their estimates of crucial factors such as room rates and expected occupancy. The Court finds that defendant properly recomputed its appraisal. Both the November 30, 1973 revised appraisal and the one issued by Hallauer-McReynolds were "accurate" as that word can be used in describing an MAI appraisal. Further, had plaintiff known on August 28, 1973 that defendant could not provide a satisfactory appraisal, it could have found one from another source. Thus, the Court finds the delay in the Pavilion project to be partially attributable to defendant's negligence.
Plaintiff seeks to recover damages incurred because closing was delayed from December 15, 1973 to August 6, 1974. However, much of the delay was caused by plaintiff's inability to find a contractor who *533 would build the structure for a price close to the estimated cost. As a result the project was redesigned and new bids taken. Defendant is not responsible for these delays. The earliest time at which plaintiff was entitled to rely on defendant's estimate was August 28, 1973. From that time until November 30, 1973 defendant's error delayed the project. Thus defendant is liable for the damages attributable to that three month period.
The Court has recomputed plaintiff's damages to reflect its findings that defendant's negligence was only the cause of part of the delay. The Court finds that, as a result of defendant's negligence, plaintiff was required to pay One Hundred Twenty Four Thousand Five Hundred Sixty Nine Dollars and Fifty Two Cents ($124,569.52) more in construction costs, Ninety One Thousand One Hundred Sixty Three Dollars and Twenty Five Cents ($91,163.25) more in interest payments and Forty Thousand Five Hundred Seventeen Dollars and Twenty Four Cents ($40,517.24) more to purchase the Pavilion. The sum of these figures is Two Hundred Fifty Six Thousand Two Hundred Fifty Dollars and One Cent ($256,250.01) and judgment for plaintiff will be entered in that amount.
NOTES
[1] Unless otherwise stated the word plaintiff will refer to Breckenridge Hotels Corporation.