**E. J. WILLS, Jr. and Mildred Wills,**
**Plaintiffs-Appellants,**

v.

**Dale ALCORN and Katie Alcorn,**
**Defendants-Respondents.**

**No. 12213.**

Missouri Court of Appeals,
Southern District,
Division Three.

June 18, 1982.

Francis J. Siebert, Scott City, Weber Gilmore, Sikeston, for plaintiffs-appellants.

D. David Crader, Crader & Crader, Sikeston, for defendants-respondents.

HOGAN, Judge.

This action was commenced as an action for rent and possession pursuant to § 535.-010, RSMo 1969. Plaintiffs sought to recover rent due for the use of and possession of an 8-acre tract in Scott County "just to the north and east of the intersection of Interstate 55 and Highway 60–62." By counterclaim, defendants averred that plaintiffs had verbally agreed to convey 2 acres of the 8-acre tract to defendants in payment of a real estate broker's commission due defendant Dale Alcorn and prayed specific performance of the verbal contract. The cause was certified to the circuit court pursuant to former § 517.330 and was tried to the court sitting without a jury. The trial court heard evidence and ordered: 1) Specific performance of the verbal contract to convey 2 acres of the 8-acre tract in suit, and 2) Proration of the real property taxes paid by plaintiffs during the period of defendants' occupancy of the tract they claimed. Plaintiffs appeal.

The substance of plaintiffs' proof was that they lived on the 8-acre tract, which was referred to as "a hill" or "this hill," and that in March 1975, plaintiff E. J. Wills orally demised part of the tract to the defendants at an "agreed-on rental" of $40.00 per month. With plaintiffs' permission, defendants "moved [a] trailer onto the hill." Defendants paid no rent from March 1975 to August 1978 at which time plaintiffs received an offer to buy the 8-acre lot for $12,500.00. Plaintiff E. J. Wills testified that he had allowed defendants to occupy their 2-acre lot without making any serious effort to collect rent because defendant Dale Alcorn was "a friend" and Wills was "helping him [try] to get on his feet."

Defendants' case, capsulized, was that defendant Dale Alcorn was a licensed real estate broker. At some time before Dale moved onto the 2-acre tract on "the hill," while he was living at a trailer court in or

near Sikeston, plaintiff E. J. Wills "took a notion to sell his ... eighty-acre farm." Dale was working with one Bob Hale; Hale had said his brother wanted to buy a farm. Wills told Dale "[the amount] he wanted" and asked "what [Dale] charged." Dale said "... five percent. I [wouldn't] charge him any more than I [would] anybody else." A further conversation followed in a business establishment called the "War Drum"; Dale was once again asked about the commission. Wills was told "it would still be five percent and [Dale] thought [Wills] could make a deal with Bill Hale." Thereafter, Dale showed the 80-acre farm—which adjoins or is near "the hill"—and suggested a method of financing the purchase. Later, plaintiff E. J. Wills told Dale the deal had been consummated.

It was stipulated that plaintiffs sold the 80-acre farm on or about March 1, 1975, to Bill Hale and his wife for $80,000.00. The contract of sale was prepared and executed in the office of a Sikeston attorney but defendant Dale Alcorn was not present. It was further stipulated that Dale had no written "listing agreement" for the sale of the 80-acre farm, but about 22 days after the farm was sold, defendants moved onto the 2-acre tract on "the hill."

The defendants' evidence further indicated, or permitted the inference, that after the sale of the 80 acres was agreed upon, but before it was consummated, plaintiff E. J. Wills suggested Dale accept a lot on "the hill" in lieu of a cash commission. Wills told Dale and his wife to "pick out anyplace you want" and later indicated the boundaries of the lot. Defendants agreed and moved their trailer onto "the hill." Defendants' evidence was that they had spent $8,141.13 improving the lot. Dale had asked for a deed to the lot but Wills had said "I will do it but I don't have time right now."

The record and the briefs have come to us in a very unsatisfactory state. No exhibits have been filed, and although extensive findings of fact are incorporated in the legal file, there is no record that these findings were requested by either party.

Plaintiffs' brief does not comply with the requirement that an appellate brief contain a "fair and concise statement of the facts relevant to the questions presented," Rule 84.04(c), Missouri Rules of Court (12th ed. 1981), and the "points relied upon" are keyed to and based upon the unrequested findings.

■ Rule 73.01 provides that in bench-tried cases, the trial court may "prepare and file, a brief opinion containing a statement of the grounds for its decision and ... if requested by counsel, *shall*, include its findings on such controverted fact issues as have been specified by counsel." (Our emphasis.) Voluntary findings are permitted, *Mueller v. Larison*, 355 S.W.2d 5, 8[2] (Mo.1962), but when voluntary findings are made, they present no question for review other than as a general finding, and an appellant may not assign as error a specific finding of fact or conclusion of law, or the lack thereof. *Key v. Gregory*, 553 S.W.2d 329, 333[4] (Mo.App.1977); *Swetnam v. U. S. By-Products Corporation*, 510 S.W.2d 829, 830[1] (Mo.App.1974). We would again stress that the rules of appellate procedure do not require perfection, only reasonable compliance, but if an appellate court is required to determine for itself, principally by speculation, what the appellant conceives the relevant facts to be and to attempt to resolve the appeal on what the court perceives the merits to be without findings properly tendered and requested, the court is required to assume "the conflicting duties of acting as counsel for the litigants, a duty not contemplated of appellate courts with respect to trial errors, in addition to the discharge of the judicial function required of appellate courts. ..." *Morris v. Willis*, 338 S.W.2d 777, 780 (Mo.1960). Nevertheless, because our duty runs to the litigants rather than their counsel, we consider very briefly the points advanced by the appellants, emphasizing once again that the judgment of the trial court is presumptively correct and the plaintiffs have the burden to demonstrate error. *Massman Construction Co. v. Kansas City*, 487 S.W.2d 470, 478[6] (Mo.1972); *Pallardy v. Link's Land-*

*ing, Inc.*, 536 S.W.2d 512, 515[2] (Mo.App. 1976).

The plaintiffs claim the record is devoid of proof that there was either an express or implied contract of employment between the plaintiffs and defendants. We are cited to *Kohn v. Cohn*, 567 S.W.2d 441, 446 (Mo.App.1978), wherein our colleagues at St. Louis held that to establish a broker's agency contract, it must appear that the owner authorized the broker to produce a buyer or lessee and that the broker agreed to do so under such circumstances that the owner had reason to know the broker's services were not offered gratuitously but were undertaken with an expectation of compensation, and further held that the broker must prove the essential elements of a contract of employment. We most cordially agree, but disagree that no contract of employment could be inferred from the acts and conduct of the parties in this case. A trial court, functioning as a fact-finder, can draw all reasonable inferences from the evidence presented to it and can base its ultimate conclusion upon such reasonable inferences. *State ex rel. Eagleton v. Patrick*, 370 S.W.2d 254, 257[5], 97 A.L.R.2d 1180, 1184 (Mo.1963).

Our examination of the record indicates that the following mediate facts are inferable from the testimony presented by the defendant: The parties were—or had been—friends for many years. For 10 years prior to the time of trial, Dale Alcorn had been actively engaged in business as a real estate broker.

The parties plaintiff and defendant visited frequently, sometimes at Alcorns' trailer, sometimes at a Sikeston restaurant called the "War Drum." In the early part of 1975, Wills decided to sell an 80-acre farm. Alcorn was working for one Bob Hale; Hale had told Alcorn that Hale's brother Bill and a woman identified only as Cuma were planning to be married and wanted to buy a little farm. Wills told Alcorn his asking price ["what he wanted"] and inquired "what [Alcorn] charged." Alcorn charged 5 percent of the sale price as commission. Wills did not object.

Alcorn contacted Bill Hale and offered to show the farm to him and Cuma. He also suggested a method of financing the purchase to the prospective buyers. Bill and Cuma did work out a deal, and Wills advised Alcorn that the farm had been sold. Alcorn was not present when the farm was sold, but he knew the sale had been made. To reiterate, it was stipulated that Wills sold the farm to Bill and Cuma Hale for $80,000.00. In short, the defendants' evidence, taken as a whole, warrants the conclusion that Dale Alcorn's services were performed in such circumstances that plaintiffs had reason to know they were performed with the expectation of compensation from the plaintiffs, and the services were beneficial to the plaintiffs. A trial court could have found an implied contract of agency. *Kohn v. Cohn*, supra, 567 S.W.2d at 447; *Hoover v. Whisner*, 373 S.W.2d 176, 181[6] (Mo.App.1963).

Plaintiffs further suggest there is no evidence Dale Alcorn produced a buyer ready, willing and able to perform. Inasmuch as it was stipulated that the plaintiffs entered into a binding contract with Bill and Cuma Hale, that issue was eliminated from the case. *Shephard v. Hunter*, 508 S.W.2d 234, 238[7] (Mo.App.1974); *Isaac T. Cook Co. v. Craddock-Terry Co.*, 109 S.W.2d 731, 733[2] (Mo.App.1937).

A further argument tendered by the plaintiffs is that defendants failed to prove the existence of an exception to the Statute of Frauds—we take the argument to refer to § 432.010, RSMo 1978—which, plaintiffs argue, is "the crux of [defendants'] case." In our view, the Statute of Frauds has no application to the case. The usual reluctance of courts of equity to order specific performance of contracts for personal services is overcome when the services have been fully performed. See: *Koman v. Morrissey*, 517 S.W.2d 929, 935[6] (Mo.1974). Here, as in *Koman*, defendants' claim is that defendant Dale Alcorn has fully and satisfactorily performed the personal services required of him and defendants seek the compensation due them pursuant to the

agreement. We are not concerned with partial performance. The rule is that the Statute of Frauds has no application when there has been a full and complete performance by one of the contracting parties. *Koman v. Morrissey,* supra, 517 S.W.2d at 935–936[8]; *Joseph Schlitz Brewing Co. v. Missouri Poultry & Game Co.,* 287 Mo. 400, 412–413, 229 S.W. 813, 816–817[3] (1921); *Trimmer v. Short,* 492 S.W.2d 179, 183[1] (Mo.App.1973). Inasmuch as the defendants sought conveyance of a particular tract of land, it can be said that defendants had no adequate remedy at law. *Wilkinson v. Vaughn,* 419 S.W.2d 1, 5[2] (Mo.1967).

We have examined plaintiffs' other contentions and find them to be without merit. Emphasizing that our review has been wholly ex gratia, we find no error materially affecting the merits of the action and accordingly, the judgment is affirmed.

BILLINGS, P. J., and TITUS and PREWITT, JJ., concur.