Beverly NOVAK, Administratrix c.t.a. of the Estate of Anna Trowbridge, Deceased, Plaintiff-Respondent,

v.

Gerald AKERS, Defendant-Appellant.

No. 12930.

Missouri Court of Appeals, Southern District, Division Two.

May 1, 1984.

Motion for Rehearing or Transfer Denied May 9, 1984.

Application to Transfer Denied June 19, 1984.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for defendant-appellant.

Paul F. Reichert, Springfield, for plaintiff-respondent.

HOGAN, Acting Presiding Judge.

This is a proceeding in probate to discover and determine the title to assets under the provisions of § 473.340, RSMo 1978. The trial court found that defendant Gerald Akers had sold personal property which belonged to the decedent for cash in the amount of $3,928.45 and had concealed the cash; it further found that defendant had wrongfully withdrawn the sum of $1,862.79 from a checking account which belonged to the decedent. Accordingly judgment was entered in favor of the plaintiff administratrix c.t.a. and against the defendant in the amount of $5,791.24. No judgment for damages or expenses was entered. Defendant appeals.

On July 17, 1981, Anna Trowbridge, 81 years of age and a resident of Laclede County, died testate in an Omaha, Nebraska, hospital. By will dated June 3, 1964, the testatrix pretermitted her children and left the bulk of her estate to the defendant.

Immediately after the testatrix's death, both her children and Akers sought control of her assets. Akers won the race by coming to Missouri, holding a public auction sale and pocketing the cash. He further "closed out" a joint checking account. The testatrix's granddaughter filed an application for letters of administration c.t.a. in the Probate Division of the Circuit Court of Laclede County on July 28, 1981. Upon the administratrix's motion, the court issued an order restraining the sale of property at the decedent's place of residence. The order was delivered, but to no avail.

So, by August 13, 1981, the procedural situation in the probate division was this: plaintiff had filed an application for letters; she had made a bond of some order and was prepared to make the inventory required by § 473.233, RSMo (Supp.1983). It is of importance in context that this section now provides:

> "(7) All property possessed but not owned by the decedent at his death shall be listed in the inventory, *but separately from other property*, together with a statement as to the knowledge of the personal representative as to its ownership." (Emphasis ours.)

A notice of a hearing of some sort was mailed to the defendant August 7 and was returned non est 5 days later. At least two claims were filed against the estate. The decedent left no real property in this state. In February 1982, the administratrix filed a petition to determine the title and right to possession of personal property. A copy of the petition and summons was mailed to the Sheriff of Douglas County, Nebraska, on June 1, 1982. Six days later the process was returned with a request for an advance fee of $25. The advance was made. The probate division's docket entry of June 28, 1982, is instructive:

"6/28/82 Summons returned by sheriff GOOD SERVICE"

On July 19, 1982, the administratrix and Akers appeared in person and by attorney. The trial court announced it would first consider the petition of Beverly Novak for appointment as administratrix c.t.a.; then the petition to discover and try title to the property would be considered. The formal judgment recites that the defendant entered a general denial as to all issues framed by the petition [to discover assets].

The right to administer was tried without incident. The defendant testified that the will was one of two mutual wills executed at the same time; "Well, I—we had, both had one, me one and she one, for the household goods and personal effects. If she passed away first, I was to get hers; if I passed away, she was to get mine." Counsel then stated to the court that Akers lived so far away he could not manage an estate, even if he appointed a delegate. The parties rested, and the trial court announced:

> "All right. And based on the evidence that I have heard, I'm going to issue the letters of administration to the Petitioner, Beverly Novak."

Without objection, the court then proceeded to hear evidence upon the petition to discover assets. The parties have argued the effect of the evidence at length, but we decline to burden the opinion by reciting every fact, circumstance and indicium of ownership recited and produced by the parties. One of the testatrix's daughters testified that some of the property Akers sold at auction belonged to her; there was evidence from the petitioner's witnesses which would support an inference that the bulk of the property sold at auction belonged to the testatrix and that the checking account was properly part of her estate. A fair statement of the facts requires notice of the evidence that the defendant and the testatrix lived together for 25 years. He testified that he believed he had a right to sell the property, and he had paid a part of the decedent's debts.

■ The sufficiency of the evidence is of course questioned, but this cause was

tried under the Civil Rules, and when a cause is tried to the bench the trial court functions as the trier of fact who resolves conflicts in the evidence; the trial judge determines the credibility of the witnesses and may accept or reject their testimony in part or as a whole. *State ex rel. Reynolds County v. Riden,* 621 S.W.2d 366, 368 (Mo. App.1981); *Cusumano v. Outdoors Today, Inc.,* 608 S.W.2d 136, 139[4] (Mo.App.1980); *Prudential Property & Cas. Ins. Co. v. Cole,* 586 S.W.2d 433, 434[3] (Mo.App.1979). Moreover, a trial court, functioning as a fact-finder, can draw all reasonable inferences from the evidence presented to it and can base its ultimate conclusions upon such reasonable inferences. *State ex rel. Eagleton v. Patrick,* 370 S.W.2d 254, 257[5], 97 A.L.R.2d 1180, 1184 (Mo.1963); *Wills v. Alcorn,* 636 S.W.2d 142, 145 (Mo.App.1982). Upon review of the record, we find that there was substantial evidence to support the judgment; it does not appear that the trial court erroneously declared or applied the law, and the whole record generates no firm belief on our part that the judgment entered was wrong. We must therefore affirm the judgment, *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), unless, as defendant contends, the probate division was without jurisdiction to enter the order.

We must examine the contention that the trial court was without jurisdiction because if the judgment is void in the sense that it is a nullity, then all this court can do is note the invalidity of the judgment or order appealed from and dismiss the appeal. *Ross v. Conco Quarry, Inc.,* 543 S.W.2d 568, 571 (Mo.App.1976).

Able appellate counsel for the defendant does not make his argument very clear. In fact, it smacks of afterthought. The only authority cited to us which bears directly upon the point is the last sentence of § 473.013, RSMo (Supp.1983), which reads, in pertinent part:

"... Whether the administration is supervised or independent, *from the time of first publication of the notice provided in section 473.033,* the probate division of the circuit court *has in rem jurisdiction* of all real and personal property of the decedent located within this state." (Emphasis ours.)

Counsel cites us to familiar principles, e.g., the parties cannot confer jurisdiction of the subject-matter upon the court. He also maintains that the plaintiff lacked the capacity to sue. We dismiss the allegation that plaintiff lacked the capacity to sue; § 473.340.2 specifically provides that proceedings under that statute are governed by the rules applicable to trials in courts of general jurisdiction. Entering a general denial does not put in issue, but rather admits, the capacity in which a plaintiff sues or a defendant is sued. *Hendon v. Kurn,* 351 Mo. 980, 990, 174 S.W.2d 806, 810 (1943); *Schneider v. Best Truck Lines, Inc.,* 472 S.W.2d 655, 659 (Mo.App.1971).

The substance of the defendant's contention seems to be that the probate division acquires no jurisdiction whatever until it acquires in rem jurisdiction. Such is not the case.

Any general discussion of probate jurisdiction is well beyond the scope of this opinion. It may well be that the *in rem* jurisdiction of the probate division attaches when the notice is published; such seems to have been Professor Simes' idea.[1] However, as is apparent from a reading of § 472.140, the probate division also exercises, or may exercise, in personam (or perhaps, quasi in rem) jurisdiction. The statute identifies the cases in which in personam jurisdiction may be exercised by saying that an adversary proceeding means "any proceeding which requires, as a condition precedent to an entry of an order or judgment on the merits, notice of hearing to

---

1. Simes, The Administration of a Decedent's Estate as a Proceeding in Rem, 43 Mich.L.Rev. 675, 696 (1945), reprinted Model Probate Code 489 (1946). He also suggested there was authority for the proposition that substantial compliance with the statutory notice requirements concerning the sale of land was necessary for the probate court to have jurisdiction of the sale as a proceeding in rem. 43 Mich.L.Rev. at 685. That is all we held in *Clapper v. Chandler,* 406 S.W.2d 114, 120 (Mo.App.1966).

persons interested in the proceeding ...." The statute excepts other orders thought to be true in rem orders.

It is further to be noted that § 473.013 addresses the administration of the estate "... from the filing of the application for letters ... until the decree of final distribution and the discharge of the last [personal representative] ...." This means that the jurisdiction of the probate division attaches when an application for letters is made. *State ex rel. Shriners' Hospitals for Crippled Children v. Hensley*, 385 S.W.2d 820, 827 (Mo.App.1964).[2] Further, it has been the law for many years that a probate court has that species of authority sometimes called "jurisdiction to determine jurisdiction." *In re Sheldon's Estate*, 354 Mo. 232, 238, 189 S.W.2d 235, 237[6] (banc 1945); *Coleman v. Dalton*, 71 Mo.App. 14, 24–25 (1897). There is also authority for the proposition that a probate court's power to compel an inventory vests it with the inherent ancillary power to determine what property constitutes assets or belongs to the estate and therefore to try title to the property. 1 Woerner, American Law of Administration § 154 (3d ed. 1923).

In this case, defendant Akers sold a number of chattels at auction. One of the testatrix's daughters believed, and testified that some of her property, as well as that of her mother had been sold. Akers had also removed the proceeds of a bank account. It was proved that the estate had debts. Of necessity, the probate division was required to determine the title to the property Akers had taken in order to proceed accurately with administration of the estate. We conclude it had jurisdiction to do so, that defendant was served with process as provided by Rule 54.14, specifically made applicable by § 473.340.1, RSMo (Supp.1983), and that the judgment rendered and entered is a valid judgment in personam.

Accordingly, the judgment is affirmed.

FLANIGAN and CROW, Alternate Judges, concur.

PREWITT, J., disqualified.

---

**2.** See also *In the Matter of the Estate of Greening*, 232 Mo.App. 78, 82, 89 S.W.2d 123, 126 (1936). This holding, which is indirect, has been taken to mean that the commencement of administration proceedings is conclusive as to the time when the court acquires jurisdiction.

Basye, The Venue of Probate and Administration Proceedings, 43 Mich.L.Rev. 471, 490–91 (1944), reprinted Model Probate Code 527.