ST. JOHN BANK & TRUST CO.,
Plaintiff-Respondent,

v.

CITY OF ST. JOHN,
Defendant-Appellant.

No. 46953.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 11, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1984.

Application to Transfer Denied
Nov. 20, 1984.

---

Thomas Plunkert, St. Louis, for plaintiff-respondent.

Carl I. Katzen, St. Louis, for defendant-appellant.

SIMON, Judge.

Defendant City of St. John appeals from a judgment for plaintiff St. John Bank & Trust Co. in an action for damage to property caused by a fire. The fire was intentionally set by a member of the St. John Police Department. Plaintiff, as trustee of a trust, owned the property, a movie theater, but did not operate the theater. Dam-

ages, therefore, were based solely on the damage to the building. Liability was premised on the city's failure to use ordinary care in supervising its police force. We affirm.

■ At the outset, we note that there was no issue in this case as to the city's immunity from liability. The city concedes in its brief that it has purchased insurance covering the exercise of a governmental function. It has therefore waived the protection of sovereign immunity. Section 71.-185 RSMo (1978). Although the operation and supervision of a police department are acts involving discretion of public officials, they constitute the exercise of a governmental function, the immunity for which is waived by the purchase of insurance. *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 297–98 (Mo.App.1983). We therefore proceed to the merits.

The fire giving rise to this suit occurred during the early morning hours of April 30, 1979. It is undisputed that the fire was set by Sgt. Dunn, a member of the St. John Police Department, while he was on duty. Plaintiff contends that the fire was the last of a series of events which constituted harassment of the theater operators. In addition, plaintiff alleged that the city knew or should have known of this harassment, and that the city failed to take any corrective action to end the harassment. This failure to supervise the department properly, plaintiff asserts, resulted in the arson giving rise to this action.

■ The elements of an action for negligence are (1) existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure. *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. banc 1976). The last element includes the question of proximate cause. The test of proximate cause is "whether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission of defendant, not whether a reasonable person could have foreseen the particular injury." *Gaines v. Monsanto*

*Co.*, 655 S.W.2d 568, 571–72 (Mo.App.1983). The fact that the damage was caused by a criminal act of arson does not end our inquiry, for "if the foreseeable likelihood that a third person may act in a particular manner is one of the hazards which makes a person negligent, such an act of a third party, whether innocent, negligent, intentionally tortious or criminal, does not prevent that person from being liable for the harm caused thereby." *Scheibel v. Hillis,* 531 S.W.2d at 288. With these principles in mind, we now review the evidence in the light most favorable to the verdict.

From the evidence presented the jury reasonably could have found that the operator of the theater had been subjected to a pattern of harassment by members of St. John Police Department prior to April 30, 1979. The police made a practice of interfering with the theater's customers, refusing to allow them to wait outside the theater before entering, and taking down license plate numbers of customers' cars. There were two instances where the police stopped movies in the middle of shows to conduct searches of the theater; once allegedly to look for minors consuming alcoholic beverages, the other to look for unaccompanied minors watching an "R-rated" movie. There was also an incident involving a 16–year old girl employed by the theater who was told by one officer to "open her blouse or he would blow her head off." There was also evidence showing that those acts which were arguably proper police work were completely groundless and unwarranted.

The jury also could have found that the city knew, or should have known, of this harassment and failed to take any corrective action. A meeting was held on February 27, 1979, two months before the fire, between the operators of the theater and various city officials, including the City Manager and Chief of Police. At this meeting the operators aired their grievances about the police. Following the meeting, and the continuing harassment, the operators contacted other city officials, including the City Attorney and a member of the City Personnel Board. The city ad-mits that it took no action in response to the complaints, alleging that the acts constituted at least arguably proper police conduct, and therefore required no corrective measures. While there was evidence to support this view, the jury found otherwise and we will not upset this finding.

We now come to the events of the weekend before the fire, which plaintiff stresses as showing the glaring need for proper supervision of the police force. On both Friday and Saturday nights there were incidents at the theater regarding patrons waiting on the sidewalk outside. Each night there were altercations between one of the theater operators and police officers, which resulted in the issuance of two citations for obstruction of the police. On the Friday night, Sgt. Dunn had an argument with one of the operators, during which the officer threatened to close down the theater.

On Sunday, April 29, the night before the fire, there was no incident at the theater. The evidence did reveal, however, a serious breach of proper police conduct by a number of officers. That night, as the shifts were changing, Sgt. Dunn arrived for work with a quantity of beer. He and three other officers stayed in the station for a time drinking beer. While there, Sgt. Dunn took out a gun and began firing shots into the wall of the police station. Then the four went to an unmarked police car and began driving around the city. During this drive Officer Dunn fired shots at a black man who was walking down a street, and also shot at a cat, a car, and the door to the movie theater. The four then returned to the police station. Later the next morning, Dunn set fire to the theater.

■ We come now to the question of whether the city had any duty to the plaintiff. Given the pattern of harassment, of which the city had at least constructive knowledge, we think it clear that such a duty existed. The theater operators had been subjected to abuses of police powers and repeated acts of misconduct. It is clear that under these facts the city owed a

duty to the theater operators to supervise its department and correct these abuses. *See, Scheibel v. Hillis,* 531 S.W.2d 285 (woman who made shotgun available to person known to her to have dangerous propensities could be liable for failure to warn third person); *Porter v. Thompson,* 357 Mo. 31, 206 S.W.2d 509 (1947) (employer could be liable for assault by employee if employer knew or should have known of employee's vicious propensities).

Defendant argues, however, that the evidence failed to show that it had knowledge, prior to the fire, of any act that would give rise to a duty to prevent the arson. Thus, argues defendant, the plaintiff failed to show both a duty to protect plaintiff from this harm and that the failure to supervise was the proximate cause of plaintiff's injury. We disagree because defendant's argument focuses too narrowly on the arson.

As noted earlier, the evidence established a duty running to the operators of the theatre to protect them from the abuses of the police. This is because the risks created by the failure to supervise directly threatened the operators' business. We also think that given the known harassment, a reasonably foreseeable risk of damage to plaintiff's building and property was also shown. Although damage to the operators' business may have been the most obvious risk, it is clear that damage to the building housing that business was also a reasonably foreseeable risk so as to be encompassed within the scope of the duty to properly supervise the police department. While there may have been no prior indication that the damage would be accomplished by arson, there was a prior indication that damage to the building could occur. "[I]f the result is foreseeable, the manner in which it is brought about need not be, and is immaterial." Prosser & Keeton, Torts § 44, at 317 (5th ed. 1984). Therefore, we find the first element satisfied.

■ Having noted earlier that no corrective measures were taken, the second element has been satisfied. The duty to properly supervise the department was breached.

We turn now to the question of whether the breach was the proximate cause of plaintiff's injury. Defendant offers two reasons why we should not so hold; first, that the arson was not a foreseeable result of the failure to supervise, and second, that the arson was an independent intervening act for which defendant is not liable.

Defendant's first argument again focuses too narrowly on the arson. Damage to the building was one of the risks within the scope of the duty to supervise. Given a breach of the duty, it was clearly foreseeable that the risk would become an actuality. Thus, we reject defendant's first argument.

■ We also hold that the arson was not an independent, intervening cause. While it may be true that defendant had no prior warning that an arson would occur, it did have notice that serious misconduct perhaps bordering on criminality, had taken place. These were the very acts requiring correction. Where the likelihood of the intervening act was one of the hazards that made defendant's conduct negligent, the fact that the act occurred does not prevent the defendant from being liable for the consequences. *Scheibel v. Hillis,* 531 S.W.2d at 288. An act is not independent if the failure to take care to prevent it is what makes the actor negligent. Although no prior arson occurred, "the duty of anticipation extends [not] only to crimes similar in nature and seriousness to those that have occurred in the past." *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881, 888 (Mo. banc 1983). Here the evidence supports the inference that the arson was simply the culmination of the harassment and thus was within "the duty of anticipation." The failure to take steps to prevent it was what made the conduct negligent. Thus, the arson was not an independent intervening act, and plaintiff established the third element, that its injury was the direct result of defendant's negligence.

Defendant's next two points relate to the jury instructions. The first point attacks

plaintiff's verdict director. The second assails plaintiff's damage instruction. We address these in order.

Defendant's verdict directing instruction reads as follows:

Your verdict must be for plaintiff if you believe:

First, members of the St. John Police Department had harassed the operators and patrons of the Gem Theatre prior to April 30, 1979, and

Second, defendant knew, or by using ordinary care could have known, of this harassment, and

Third, defendant failed to use ordinary care to supervise the St. John Police Department, and

Fourth, as a direct result of such failure, plaintiff was injured.

The phrase "ordinary care" as used in this instruction means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Defendant makes five specific complaints about plaintiff's verdict directing instruction. They are (1) that "Paragraphs, 'First' and 'Second' are improper hypothecation of facts;" (2) that those paragraphs do not require a finding that Dunn's arson was foreseeable; (3) that Paragraph Third did not limit the jury to finding a failure to supervise Dunn, but rather the Police Department generally; (4) that that paragraph improperly combines the elements of failure to do an act and that that failure was negligent, and (5) that Paragraph Fourth improperly used "was injured" rather than "sustained damage."

■ A review of defendant's after trial motion reveals that the third and fifth grounds asserted here were not raised in the motion for new trial. Defendant has therefore waived any claim of error in these respects. Rule 78.07. Reading the motion broadly we conclude that the other alleged errors were sufficiently brought to the attention of the trial court to preserve them for our review.

Defendant's claim that the first two paragraphs are an improper hypothecation of facts is based on its view that the duty necessary to liability is a duty to prevent Sgt. Dunn's act. Paragraphs First and Second do not require findings which give rise to this particular duty. Defendant argues that they are therefore improper. We disagree.

■ As noted earlier, the duty owed was a duty to protect plaintiff from the misconduct of the police. The instruction required findings of both prior harassment and the city's actual or constructive knowledge of that harassment. Together they constitute a finding of a known danger, against which the city had the power and opportunity to protect. These are facts which give rise to the defendant's duty to supervise. *Meadows v. Friedman Railroad Salvage Warehouse*, 655 S.W.2d 718, 721 (Mo.App.1983). Therefore, the hypothecation was proper.

■ Defendant next contends that the instruction improperly failed to require a finding that the arson was foreseeable. This argument again mistakes the nature of its duty. The arson need not have been foreseeable; injury to plaintiff's property must have been foreseeable. *See* Prosser & Keeton, *supra*, § 37 at 236–37. As far as foreseeability may be an element of causation, as defendant argues, the element is submitted to the jury by requiring it to find that the injury was a direct result of the act complained of. Therefore, the instruction did require the jury to make that finding.

■ Finally, we address defendant's complaint that the instruction improperly combines separate paragraphs of a proper instruction. Specifically defendant asserts that the instruction should require a finding of both a failure to do an act and that defendant was thereby negligent. Here, the instruction required the jury to find only a failure to use ordinary care in supervising the police department. Assuming this combination to be error, we fail to see how defendant was prejudiced. While there is a shade of difference in the meanings of the two formulations (one hypothe-

sizing that an act was done negligently, the other hypothesizing that the failure to do it at all was negligent) the two are essentially the same. A failure to use ordinary care is negligence. *Compare* MAI 11.02 I (defining negligence) *with* MAI 11.05 (defining ordinary care). *See also* MAI 11.07 (for use when both terms are used in an instruction). Requiring a jury to find that defendant failed to use ordinary care to supervise its police department is the same as requiring a finding that it was negligent. *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 583 (Mo. banc 1978). Any error therefore was harmless.

■ We now address defendant's final point, contending that plaintiff's damage instruction did not properly limit the jury to the value of the real estate. We find no error.

The damage instruction reads as follows:

If you find in favor of plaintiff, then you must award plaintiff such sum as you may find from the evidence to be the difference between the fair market value of the Gem Theatre before it was damaged and its fair market value after it was damaged.

The phrase "fair market value" as used in this instruction means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.

This instruction is MAI 4.02; damages for property only. No contention is made that this was an improper instruction or measure of damages.

It is undisputed that the building was the Gem Theatre. Defendant asserts that the term "Gem Theatre" is too broad, however, because it could be interpreted to include both the personal property of plaintiff's lessee, the theatre operators, and the value of the business being operated in it. We disagree. First, the record fails to reveal that any property of the theater operators was damaged. Indeed, although defendant asserts that the instruction allowed compensation for that property, it fails to direct us to any place in the transcript where the evidence showed damage to property belonging to anyone but plaintiff.

Regarding the claim that the instruction included damage to the value of the business, we fail to find any error. The evidence made it abundantly clear that plaintiff owned the property, but did not run the business. One of the operators specifically disavowed any claim for their loss of profits. Thus the evidence showed that plaintiff's loss was the damage to its property. The instruction specifically named that property. The verdict was for an amount well within the amount of loss established by the evidence. Thus we find no indication that the jury was misled by the description of property.

The judgment of the trial court is affirmed.

CRIST, P.J., and PUDLOWSKI, JJ., concur.