FIRST NATIONAL BANK OF SIKE-
STON, Plaintiff-Appellant,

v.

Dick GOODNIGHT,
Defendant-Respondent.

No. 14171.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 1986.

Motion for Rehearing or Transfer
Denied Dec. 5, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Wm. Clayton Vandivort, Vandivort and Polivick, Sikeston, for plaintiff-appellant.

James E. Spain, Hyde, Purcell, Wilhoit, Spain, Edmundson and Merrell, Poplar Bluff, for defendant-respondent.

HOGAN, Presiding Judge.

In this court-tried case based on negligent misrepresentation, plaintiff First National Bank of Sikeston appeals from an adverse ruling. The trial court based its judgment on several conclusions, one of which was that plaintiff made no submissible case. This conclusion is embodied in the trial court's finding No. 12, which we shall note. The plaintiff is an aggrieved party; two of its three assignments of error are directed essentially to finding No. 12 and we regard the submissibility issue as determinative on the merits. We believe—since the issue was directly raised by the plaintiff—that we are not precluded from resolving the appeal on its merits on that issue, *Hills v. Ozark Border Electric Cooperative*, 710 S.W.2d 338, 340 (Mo.App. 1986); *Cantrell v. Bank of Poplar Bluff,*

702 S.W.2d 935, 942, n. 1 (Mo.App.1985), even though, as we read *Grippe v. Momtazee,* 696 S.W.2d 797 (Mo. banc 1985), we may no longer regard submissibility as inherent on the appeal and decide the appeal sua sponte on the theory that trial error is immaterial if no submissible case was made.

The trial court made extensive findings of fact and conclusions of law. Bearing in mind that in a case tried to the bench, the trial judge functions as the trier of fact who resolves conflicts in the evidence and determines the credibility of witnesses, and that he may accept or reject their testimony in part or as a whole, *Novak v. Akers,* 669 S.W.2d 644, 647 (Mo.App.1984), and bearing further in mind that the trial court, functioning as a fact-finder, can draw all reasonable inferences from the evidence presented to it and base its ultimate conclusions upon such reasonable inferences, *Wills v. Alcorn,* 636 S.W.2d 142, 145 (Mo. App.1982), and having examined the record for ourselves, we conclude the trial court's findings fairly state the operative facts as it might have found them to be. In pertinent part, those findings are:

"1. Plaintiff is a banking institution at Sikeston, Missouri and Defendant is licensed as a real estate agent and broker and maintains an office at Malden, Missouri, approximately 40 miles from Sikeston. Pat Lea is the President ... of [the] plaintiff bank, and personally handled all transactions relating to the subject matter of this lawsuit.

2. Phillip Shelton, a resident of Malden, applied to the bank for a loan to purchase a house and lot in Malden ... for speculation. Shelton represented that the house and lot was worth more than ... $27,500.00 and offered a deed of trust upon said house and lot as security.

3. Pat Lea was personally acquainted with Shelton and ... had both a social and business relationship with him for more than ten years. He believed Shelton to be an honorable person, and placed great trust and confidence in him. Lea directed Shelton to obtain an appraisal of [the] property....

4. Shelton selected defendant Goodnight to appraise [the] property and Shelton furnished Goodnight with a printed appraisal form. Goodnight knew that the appraisal was to be used in connection with the loan application with plaintiff bank and [the] bank did rely upon [the] appraisal in making the loan to Shelton. The form provided to Goodnight had a street description of 107 Park Street, but had no legal description and had a blank space for a legal description.

5. Shelton showed Goodnight a house and lot located at 107 Park Street, Malden, Missouri. Goodnight appraised the house and lot and the fairness of that appraisal is not questioned. He appraised the property at $35,600.00, signed the appraisal form, and delivered it to Shelton.

6. At a later date, Shelton inserted the description of 'Lot 9, Block 3, Hester Addition to the City of Malden.' This description was not the legal description for the property at 107 Park Street, but was a vacant lot owned by Shelton. Shelton delivered the appraisal to plaintiff bank and following title examination of an abstract furnished by Shelton, the loan was made. At no time prior to making the loan did plaintiff bank examine the property at 107 Park Street or at Lot 9, Block 3, Hester Addition to the City of Malden. The vacant lot was not property just purchased by Shelton, but property he owned at the time he applied for the loan.

7. Goodnight had known Shelton for several years. Shelton was the paid executive director of the Bootheel Regional Planning Commission located at Malden, Missouri, and at all times relevant hereto had a good reputation in the community and Goodnight believed him to be an honest person and trusted him.

8. Approximately three years later Shelton elected to file a petition in bankruptcy and went by the bank in Sikeston and advised Pat Lea that the bank did not have a deed of trust on [the] house

and lot but only on a vacant lot and that he had inserted the description after the appraisal was made by Goodnight.

\* \* \* \* \* \*

11. It is not uncommon in the Malden community for appraisers to appraise property based upon street address without the legal description being furnished.

12. The fraudulent act of Shelton in falsifying the address of the appraised property was the cause of harm to plaintiff and defendant Goodnight did not at the time of delivering the appraisal to Shelton realize or [have] any cause to realize the likelihood that Shelton would falsify the address. Because of Defendants [sic] experience with Shelton and the reputation Shelton had in the community, defendant could not have reasonably foreseen the fraudulent act of Shelton. The fraudulent act was the superceding and intervening cause of plaintiffs [sic] injury for which the defendant is not legally responsible...."

The court entered judgment for the defendant based on these findings.

A brief statement concerning the nature of the plaintiff's cause of action is appropriate. Most of us associate the tort of negligent misrepresentation with *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425 (1922), where buyers, in reliance upon a negligently made weight certificate, were permitted to recover against a weightmaster, and *Ultramares Corporation v. Touche*, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139 (1931), a leading case on the entire subject. The basis of liability lies in negligent representation. *J. Louis Crum Corp. v. Alfred Lindgren, Inc.*, 564 S.W.2d 544, 551 (Mo.App.1978). The action is to be distinguished from negligent interference with contract, discussed in *Frank Horton & Co., Inc. v. Diggs*, 544 S.W.2d 313 (Mo. App.1976), and intentionally tortious interference with contract, as discussed in such cases as *Community Title Co. v.*

*Roosevelt Federal Savings & Loan Association*, 670 S.W.2d 895, 904–905[1] (Mo.App. 1984). Negligent representation as an actionable tort has been recognized in this jurisdiction in *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo.1967), and *Aluma Kraft Manufacturing Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.App.1973). At least one Missouri court has extended liability for negligent misrepresentation to professional appraisers, holding that they are required to exercise reasonable care in preparing their reports. *Breckenridge Hotels Corp. v. Real Estate Research*, 452 F.Supp. 529, 532[1] (E.D.Mo.1978). Although that case was vacated upon stipulation of the parties, *Breckenridge Hotels Corp. v. Real Estate Research*, 452 F.Supp. 385 (E.D.Mo. 1978), there is some general authority that commercial real estate appraisers may be held liable for negligent misrepresentation. Annot., 21 A.L.R.4th 867 (1983).

The basis of liability for negligent misrepresentation is stated by the American Law Institute in § 552, Restatement (Second) or Torts (1977), thus:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information...." [1] Here, the plaintiff's allegations of negligence were: "... in particular, Defendant negligently failed:

(a) To view the property which was to be appraised;

(b) To check the written appraisal submitted to Plaintiff for accuracy in so far as the legal description ... contained on it is concerned;

---

1. For a much more extensive discussion of the general law of misrepresentation, see W. Keeton, Dan B. Dobbs, R. Keeton and D. Owen, Prosser & Keeton, Law of Torts 746–747 (5th ed. 1984) [hereinafter Prosser & Keeton]; F. Harper, F. James and O. Gray, Law of Torts § 7.6 (2d ed. 1986).

(c) To adequately investigate the information furnished to him by Mr. and Mrs. Shelton and upon which he was relying in preparing and submitting said appraisal."

As noted, two of the plaintiff's three assignments of error are directed to Finding No. 12. Essentially, the two assignments present different sides of the same coin. Assignment II, slightly paraphrased, is that the trial court's finding that Shelton's actions were a superseding and intervening cause of the bank's loss is not supported by substantial evidence and is a misapplication of the law because the defendant created a condition which he knew, or should have known, would give Shelton occasion to commit an intentional harm to the bank and Shelton's negligence was a substantial factor in bringing about the plaintiff's damage. Assignment III, again slightly paraphrased, is that the plaintiff's damages were caused by defendant's negligence, and the trial court erred in holding that defendant's negligence did not cause plaintiff's damages because defendant, as an appraiser, owed a duty to furnish correct information to the plaintiff and failed to do so.

Finding No. 12, which discloses the trial court's reasons for ruling against the plaintiff has been set out, but bears repetition in light of plaintiff's assignments II and III. Finding No. 12 was:

"12. The fraudulent act of Shelton in falsifying the address of the appraised property was the cause of harm to plaintiff and defendant Goodnight did not at the time of delivering the appraisal to Shelton realize or [have] any cause to realize the likelihood that Shelton would falsify the address. Because of Defendants [sic] experience with Shelton and the reputation Shelton had in the community, *defendant could not have reasonably foreseen the fraudulent act of Shelton. The fraudulent act was the superceding and intervening cause of plaintiffs [sic] injury for which the defendant is not legally responsible....*"
(Our emphasis.)

■ To establish negligent liability for the act of another, a plaintiff must show: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure. *Scheibel v. Hillis*, 531 S.W.2d 285, 288[1] (Mo. banc 1976); *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 401[2–4] (Mo. App.1984); *Butler v. Circulus, Inc.*, 557 S.W.2d 469, 474[2, 3] (Mo.App.1977). One test of negligent liability is said to be "foreseeability." *Oberkramer v. City of Ellisville*, 650 S.W.2d 286, 298[18] (Mo.App. 1983); *Hyde v. City of Columbia*, 637 S.W.2d 251, 271[17] (Mo.App.1982), cert. denied, 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983). However, as pointed out in *Oberkramer*, 650 S.W.2d at 298[18], our courts have used the term "foreseeability" in two different senses—to limit both the scope of defendant's duty and the existence of "proximate cause." In our case, it is arguable that the plaintiff's second and third points could be addressed either in terms of defendant's violation of duty, or his violation of duty as the "proximate cause" of plaintiff's injury. Our reading of Finding No. 12 is that the trial court's ruling was based on its conclusion that Goodnight failed to determine and formulate a correct "legal" description of the premises to be mortgaged, although we find ourselves hard pressed to believe Goodnight was required to investigate and ascertain the plat description of the tract which Shelton asked him to appraise. The plaintiff, in our view, failed to establish the scope of the defendant's duty.

■ There was evidence of custom and usage in the community around Malden, which the court found to be about 40 miles from Sikeston. The evidence of a professional appraiser from Poplar Bluff and bankers from Bernie and Malden was that it is common practice in the area to have independent appraisals made on the basis of the "street description" only. The plaintiff had evidence from one Kiesling, a real estate appraiser from Sikeston, in the

form of a stipulation, that an appraiser should certify the lot and block description of the property he is appraising. Presumably, Mr. Kiesling's evidence was received as an "expert" opinion. There was, however, no evidence of the standard of care adopted by the profession generally, and evidence of custom and usage, while it is admissible, does not establish a standard of conduct or a defendant's duty to a plaintiff. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, 539 S.W.2d 553, 562–563 (Mo.App.1976); 2 Wigmore, § 461 (Chadbourn rev. 1979).

■ The trial court's finding, as we construe it, was that *if* there was a breach of defendant's duty to incorporate a lot and block description of the parcel in his appraisal, that breach was not a proximate cause of plaintiff's injury, and we can find no reversible error in that finding, which is to say we find no error within the scope of Mo.R.Civ.P. 73.01(c), as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The determinative question is whether Shelton's substitution of one lot for another was a "proximate cause" of the plaintiff's injury and damage. To prove the third element of a negligent cause of action, which we have just addressed, a plaintiff must prove that the defendant's negligence was a proximate cause of the plaintiff's damage. *Scheibel v. Hillis*, 531 S.W.2d at 288[1]. It has been held "that in order for an act to constitute the proximate cause of an injury, *some* injury ... must have been reasonably foreseeable." *Dickerson v. St. Louis Public Service Company*, 365 Mo. 738, 746, 286 S.W.2d 820, 824[3–5] (banc 1956); *Oberkramer v. City of Ellisville*, 650 S.W.2d at 298[18]. Yet other courts have stated that the existence of proximate cause is determined by the inquiry:

"'[W]hether, after the occurrence, the injury appears to be the reasonable and probable consequence of the act or omission of [the] defendant, not whether a reasonable person could have foreseen the particular injury.'"

*St. John Bank & Trust Co.*, 679 S.W.2d at 401[2–4]; *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571–572[11–14] (Mo.App.1983).

Yet another facet of the law of "proximate" cause is the doctrine of "intervening" cause. As Prosser and Keeton note, "'Intervening cause,' like 'direct causation,' is a term easier of general comprehension than of any exact definition." Prosser and Keeton, Torts § 44. In this connection, the Restatement (Second) of Torts § 448, states:

"The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

In applying § 448, the court in *Ford v. Monroe*, 559 S.W.2d 759, 762[2–4] (Mo.App. 1977), concluded that:

"[I]t is a general principle that if a criminal act by a third person intervenes and produces plaintiff's injury which was not intended by defendant and could not have reasonably been foreseen by him, the causal chain between the defendant's negligence and the plaintiff's injury is broken."

In *Oberkramer v. City of Ellisville*, 650 S.W.2d at 298[19], the court stated:

"When a new force intervenes between a defendant's negligent acts and causes an injury that the defendant's acts might not otherwise have produced, the defendant is held liable for injury only where the intervening force was foreseeable."

Whether the commission of an intentional tort or a crime was a risk reasonably to be anticipated, or "reasonably foreseen," depended in considerable measure upon the defendant's known character, past conduct and tendency to commit the intentional

harm which was committed. Restatement (Second) of Torts, § 302B, Comment f. An appraisal not fully completed might be dangerous in the hands of a known con man, but Shelton was no such person at the time the appraisal was made. The trial court's findings emphasize that both Mr. Lea, the bank's chief executive officer, and the defendant were acquainted with Shelton; both believed Shelton to be an honorable person, and Shelton enjoyed the trust and confidence of both men. Defendant had no reason to anticipate that Shelton would commit an act made criminal by 18 U.S.C.A. § 1014 (West Supp.1986). In our view, the trial court was merely being cautious with its findings, and again in our view, correctly so. We find no erroneous declaration or application of the law. There is substantial evidence to support the judgment. We can generate no firm belief that the judgment was wrong; in fact, we agree with it.

The plaintiff's first assignment of error is that the trial court erred in finding that plaintiff's damage, if any, could not be ascertained with any degree of certainty at the time of trial because the plaintiff had never resorted to its security. We are inclined to think the law on this point may be a little more complex than the parties assume, see *Belote v. McLaughlin*, 673 S.W.2d 27 (Mo.banc 1984), but we decline to discuss it. Because the defendant is not liable in damages for any amount, the issue is moot.

For the reasons noted, the judgment is in all respects affirmed.

PREWITT, C.J., and MAUS, J., concur.

CROW, J., concurs specially.

CROW, Judge, concurring.

I concur in the result reached by the principal opinion, but not in its reference to *Grippe v. Momtazee*, 696 S.W.2d 797 (Mo.banc 1985). In *Grippe*, the trial court submitted the case to a jury, which found for the defendants. Judgment was correspondingly entered and the plaintiff appealed, assigning four trial errors. *Grippe* held that the plaintiff's assignments of error should be addressed, and only after a favorable finding for the plaintiff on one or more of the assignments of error could the appellate court reach the issue whether the plaintiff had made a submissible case—a question inherent in deciding whether the error found by the appellate court merited reversal or remand for a new trial. *Id.* at 798–99[3].

In the instant case, the trial court held that the evidence did not support a finding that the plaintiff was damaged as a direct result of a negligent misrepresentation by the defendant. That finding was the basis for the judgment in favor of the defendant, and that finding is directly attacked by the plaintiff in its assignments of error. In these circumstances, *Grippe* does not come into play; consequently, there was no need to mention it.